15402

CITY OF SPARTANBURG v. BELK'S DEPARTMENT STORE OF CLINTON, MRS. M. ANTOINETTE SOMAINI ET AL.

(20 S. E. (2d), 157)

January, 1942.

*Messrs. Carlisle & Carlisle* of Spartanburg, S. C., counsel for appellant,

*Messrs. Johnson & Johnson* of Spartanburg, counsel for respondent,

May 5, 1942.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

On October 31, 1941, the City of Spartanburg filed its petition against certain defendants, including Mrs. M. Antoinette Somaini, in the Court of Common Pleas of Spartanburg County, for the condemnation of certain real estate in the City of Spartanburg, as provided by the Public Works

Eminent Domain Law of South Carolina, being Act Number 611 of the Acts of 1936, page 1268. Along with the petition it filed a notice of a preliminary hearing before the Honorable T. S. Sease, and also a declaration of taking. It also published its notice in the Spartanburg Herald, and deposited with the Clerk of Court $100.00 for the use of the persons entitled thereto.

The foregoing petition, notice, and declaration of taking were duly served on the appellant, and she filed her return setting forth her objections and demanding a jury trial. She also served notice of her objection to the provisions of the Public Works Eminent Domain Law providing for the transfer of title and taking of property before payment for the same, on the grounds that such transfer and taking were in violation of the Constitution of the United States and of this State, which provide that private property shall not be taken for public use without just compensation.

A hearing was had before the Honorable T. S. Sease on November 24, 1941, as noticed, and thereafter Judge Sease, on December 26, 1941, filed an order overruling the objections of the appellant, and requiring that the city "make a deposit or file its bond in this Court in the amount of $3,-000.00, conditioned to secure the payment of any amount ultimately determined as the compensation to be paid," and that "upon such deposit being given as security for the payment of the compensation to be paid, the City of Spartanburg shall be entitled to immediate possession of the property taken and possession thereof shall be surrendered to the city so that commencement of work on this much needed public project shall not be delayed." The sum of $3,000.00 was deposited by the City of Spartanburg with the Clerk of Court, in obedience to the order of Judge Sease.

On January 12, 1942, the City of Spartanburg entered into possession of the property, whereupon, on the following day, the appellant served notice of intention to appeal from the order of Judge Sease. She also served a notice of a mo-

tion before Judge Sease for a stay of proceeding, and her bond in the sum of $500.00. She also served her notice of a motion for an order requiring the Clerk of Court to pay to her the deposit of $3,000.00.

The respondent served notice of its motion before Judge Sease for an order setting the case "for trial before a jury upon Calendar 1 of the Court, with right-of-way over all other cases pending trial and date of trial to be fixed as Monday, January 19, 1942, or the first practicable date thereafter." The pending motions came on for hearing before Judge Sease who, on January 26, 1942, filed an order overruling appellant's motions, and set the case for trial before the Honorable M. M. Mann, at the Court of Common Pleas on January 26, "with right-of-way over all other cases." From this last named order, the appellant served notice of intention to appeal. Upon the call of the case for trial, it was continued by Judge Mann upon the appellant's motion.

The petition of the respondent, and the accompanying notice to appellant, together with a declaration of taking, all duly executed, were in the language of the Public Works Eminent Domain Law, and were in compliance with the provisions of that Act. The petition set forth the name of the petitioner, a sufficient description of the property, a statement that its acquisition was necessary for a public works project which is described therein, a statement that the proceedings were instituted under the said Act, and a suitable prayer for relief. The notice to the appellant and other named property holders and "to whom it may concern," was duly signed by the Clerk of Court of Common Pleas, and was in the language of Section 7 of the Act. The declaration of taking was duly signed by the Mayor of the respondent, and contained a description of the property, sufficient for its identification, a statement that title in fee and immediate possession were being taken by the petitioner for the uses named in the petition, and a statement of the value

of the property, and an allegation that the sum named constitutes just compensation for the property taken.

To the foregoing petition the appellant filed her verified return, in which she raised the question that she could not answer the allegations of Paragraph 4, relating to the intentions of respondent with reference to the use of the land, and submitted that "the said allegations are not allegations of fact such as defendant is required to answer." Further making her return to the petition and to the notice and to the declaration of taking, the appellant alleged that the notice is defective, "in that copies of the same have not been posted in conspicuous places on the said real estate and entry of the same has not been made on record of *lis pendens* in the office of the Clerk of this Court" as required by law; that the declaration of taking "does not set out a statement of the sum of money estimated by the purchaser to be just compensation for the property," and that "there has not been deposited in Court to the use of this defendant the estimated amount of just compensation for the property." She alleges further that she has not been served with notice of application to the Court for the designation of a day on which defendant shall surrender possession of the premises to the respondent. She further demanded a jury trial of all issues arising in the proceeding, and prayed that the petition be dismissed, but that if the same not be dismissed, that the respondent be required to estimate the just compensation for her property, and to deposit the same in Court to her use.

The following order was filed by Judge Sease on December 26, 1941:

"This is an action duly commenced in this court by the City of Spartanburg on October 31, 1941, pursuant to the terms of the Public Works Eminent Domain Law, approved July 17, 1935, for the purpose of acquiring title in fee simple and immediate right of possession to certain real estate lying along West Main street in the City of Spartanburg needed for the widening and improvement of a portion of

that street lying between Thompson street and High Point Road as a public works project.

"The City of Spartanburg, at the time of institution of this proceeding, filed a Declaration of Taking on October 31, 1941, under Section 18 of the Act, taking immediate title in fee to the lands condemned and declaring that immediate possession of the property was being taken by the city for the purposes mentioned in the Petition. The Declaration of Taking declared that the value of the property being taken did not exceed $100.00, and the city duly deposited with the clerk of this court $100.00 as just compensation for the property being taken for the use of the persons entitled thereto.

"Notice was duly published, served and filed as required by Section 7 of the Act, giving due notice of a hearing before this Court for the following purposes:

"1. To determine the validity of these proceedings and the right of the petitioner to take title to and possession of said property prior to final judgment, as authorized by Section 18 of the Public Works Eminent Domain Law;

"2. To fix the amount of security to be given by petitioner on account of its selection to take title to and possession of said property prior to final judgment; and

"3. To designate the procedure (whether by reference to a Special Master or by trial before a jury) to determine the amount of compensation to be paid for said property, and to whom the same is to be paid.

"All defendants were properly served with copy of summons, petition, declaration of taking and notice at the time of commencement of the action, and all jurisdictional requirements have been fulfilled.

"The matter now comes before me for hearing on the above notice and the returns filed by defendants. Of the several returns filed by defendants, only the return of the defendant, Mrs. M. Antoinette Somaini, raises any real issue as to the regularity and validity of the condemnation proceedings. Besides lesser objections, she raises the point

that the taking of title and possession of her property by the city under the Public Works Eminent Domain Law is in violation of Section 17, Article 1, of the State Constitution of 1895, claiming that the taking is without just compensation first being made therefor.

"The matter has been fully heard by me and the issues have been argued by counsel for the respective parties.

"I find that the proceedings herein are in conformity with the provisions of the Public Works Eminent Domain Law under which the action was brought, that the same are regular and valid, and that the City of Spartanburg has the right to take title to and possession of the property condemned prior to final judgment as authorized by Section 18 of the Act. Upon filing of the Declaration of Taking and the deposit being made in Court, title to the property being condemned became vested in fee simple in the City of Spartanburg, and the right to just compensation for the same became vested in the persons entitled thereto.

"I find that the Public Works Eminent Domain Law and these proceedings thereunder are not subject to constitutional objection. Section 17 of Article 1 of the State Constitution must be construed in connection with the other sections of our Constitution relating to the taking of private property. When so construed, it manifestly contemplates that Article 1, Section 17, will be complied with by compliance with such provisions as the General Assembly is authorized to make to secure the payment of the compensation when finally fixed by deposit in Court. See *Lexington Water Power Company v. Wingard,* 150 S. C., 418, 148 S. E., 366.

"It is clear that the framers of our Constitution never intended that the taking of private property for public use must be delayed until the matter of the exact amount of compensation should be finally determined and the compensation actually paid to the owner. Commencement of work on much needed and vital public works would be postponed in most cases for months, and even longer. I do not think

that this is the true meaning of the Constitution. It is sufficient that payment of the compensation when fixed be secured by deposit as the General Assembly has directed.

"The provisions of the Public Works Eminent Domain Law fully meet the requirements of the Constitution. Section 18 of the Act requires that the declaration of taking shall contain a statement of the sum of money estimated by the condemnor to be just compensation for the property taken, and that, upon deposit in Court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in the declaration, and upon the condemnor giving such security as the Court may direct, title to the property specified in the declaration shall vest in the condemnor and the property shall be deemed to be condemned and taken for the use of the condemnor, and the right to just compensation shall vest in the persons entitled thereto.

"The City of Spartanburg has fully conformed with the requirements of this section. The estimated value of the property being taken is stated in the declaration of taking to be $100.00, and deposit of this amount has been made in Court for the use of the persons entitled thereto.

"The returns of several of the defendants raise the issue of the value of the property being taken and the amount of just compensation to be received, and they have demanded a trial by jury of these issues. Of course, the value stated by the city in its declaration is not final or binding upon defendants, and they have the right to a legal determination of this issue by a jury. The defendants have the further right to require that such security shall be given, in addition to the amount deposited in Court, as will reasonably assure the payment of any amount ultimately determined as the compensation to be paid.

"In view of the difference of opinion of the parties as to the value of the properties being taken, I find that the city should forthwith make a deposit or file its bond in this Court in the amount of $3,000.00, conditioned to secure the pay-

ment of any amount ultimately determined as the compensation to be paid. Upon such deposit being given as security for the payment of the compensation to be paid, the City of Spartanburg shall be entitled to immediate possession of the property taken, and possession thereof shall be surrendered to the city so that commencement of work on this much-needed public project shall not be delayed.

"The property being taken is described as follows:

"All those certain tracts or parcels of land abutting on West Main street between Thompson street and High Point Road in the City of Spartanburg, South Carolina, lying within right-of-way having a width of seventy-five (75) feet needed for widening and improvement of said West Main street as shown on plat of said project on file in the above-entitled matter in the office of Clerk of Court for Spartanburg County, South Carolina, to which plat reference is hereby made for a more detailed description of said property.

"It is so ordered, adjudged and decreed."

From the orders of Judge Sease, Mrs. M. Antoinette Somaini has appealed upon twelve exceptions, which, according to counsel for the appellant, make the following six issues for the consideration of this Court:

"1. Does the Public Works Eminent Domain Act (South Carolina Acts of 1936, No. 611, Pg. 1768), insofar as it relates to condemnation for street purposes by a municipal corporation, contravene the provisions of the Constitution of 1895 (Art. I, Section 17), that 'private property shall not be taken * * * for public use without just compensation being first made therefor'?

"2. Did the condemning petitioner (respondent) in this case, before taking the property of appellant, comply with the constitutional requirement that it must first make just compensation therefor?

"3. Did the condemning petitioner (respondent) in this case comply with the requirements of the Public Works Eminent Domain Act relating to the allegation of petition-

er's estimate of the 'just compensation for the property taken' and deposit of the same in Court to the use of the property owner?

"4. Did his Honor, the Circuit Judge, exceed his power when he designated as 'security' the deposit made under the Public Works Eminent Domain Act, which provides only for a deposit to the use of the property owner in a case of this kind?

"5. Is the appellant, as the owner, of property which the condemning petitioner (respondent) has taken in this proceeding after having deposited in Court the sum of $3,000-.00 entitled to have turned over to her the said sum of $3,-000.00?

"6. Was it error for his Honor, Judge Sease, to deny a stay of proceedings in the Circuit Court pending determination of this appeal?"

The two last named issues arose as a result of an order of Judge Sease, dated January 24, 1942, overruling the motions of the appellant that the Clerk of Court be directed to pay to the appellant the sum of $3,000.00 which had been deposited with the Clerk by the City of Spartanburg, and that the proceedings in the case be stayed pending the termination of the appellant's appeal to the Supreme Court from Judge Sease's order of December 26, 1941.

In our judgment the real issues in this case made by the exceptions have been more clearly and correctly stated by counsel for the respondent than by counsel for the appellant. The issues as stated by the respondent are:

"1. Does the Public Works Eminent Domain Act (South Carolina Acts of 1936, No. 611, page 1268), insofar as it relates to condemnation for street purposes by a municipal corporation, violate the provisions of the Constitution of 1895?

"2. Did the condemning by petitioner comply with the requirements of the Public Works Eminent Domain Act in this case?

"3. Is appellant entitled to have the sum of $3,000.00, deposited in Court as security for the payment of the compensation ultimately determined should be paid for the taking of the properties condemned in this action, now paid to her as compensation for the taking of her property alone, without the value of such property being first determined by a jury?

"4. Was it error for the Circuit Judge to deny a stay of proceedings pending appeal?"

The issue made by the first question above requires an analysis and definition of the provisions of Article I, Section 17, of the Constitution of 1895 of this State. Does the Constitution require, either in express terms or by implication, that the compensation to be made for the taking of private property for public use shall be actually paid in advance of the determination by proper authority of what is just compensation in the circumstances? We do not think that was ever the intention of the framers of the Constitution, as it would impose upon the person or corporation seeking to condemn the property for public use the hardship and almost the impossibility of determining in advance the exact amount of money which would be just compensation for the property taken.

It is patent that when the Constitution left it to the legislative authority to provide the manner and means by which condemnation should be made, it recognized this difficulty, and the legislative authority in the exercise of the power granted it made it necessary for the condemnor to secure the payment of this sum, when it was ascertained, by depositing with the Clerk of the Court the sum estimated to be necessary to meet this payment. This matter has been thoroughly discussed, and in our judgment settled, by the opinion of this Court in the case of *Wilson v. Greenville County,* 110 S. C., 321, 96 S. E., 301, from which we quote, beginning at page 326, of 110 S. C., at page 303 of 96 S. E.:

"It was decided in this state, as early as 1796, that, in the absence of a constitutional requirement that compensation

should be made, the Legislature has the power, in the exercise of the state's right of eminent domain, to take private lands for public highways without compensation. *Lindsay v. Commissioners,* 2 Bay 38; * * *. In *Lindsay's case,* the court said:

" 'Every freeholder, holding lands under the state, holds them upon condition of yielding a portion of them, when wanted for the public roads and highways.'

"In *State v. Dawson* [3 Hill, 100], decided in 1835, this right of the state was reaffirmed, after elaborate consideration by all the judges of the state, and it appears from numerous statutes that the Legislature exercised this right for nearly 200·years, from the days of the lords proprietors until the adoption of the Constitution of 1868. Since that time, we have had of force the constitutional provision that private property shall not be taken for public use without just compensation.

"But the Constitution does not define just compensation, or prescribe how it shall be made, except where the taking is for the use of a private or *quasi*-public corporation. The present Constitution contains two provisions on the subject. Section 17 of article 1 provides that 'private property shall not be taken * * * for public use without just compensation being first made therefor.' * * *

"The marked difference between the provision of section 17 of article 1, which is applicable to municipal corporations, and those of section 20 of article 9, which are applicable to private or *quasi*-public corporations, is significant, especially so when considered in the light of the previously existing law, and it clearly warrants the inference of an intention that a different rule with regard to the consideration of benefits as compensation must be applied in the case of taking for a *quasi*-public purpose from that which may be applied when the taking is for a purely public purpose. Else why expressly exclude benefits in the one case and not in the other? The exclusion in the one strongly implies the right to

include them in the other. And it is but reasonable and just that such a difference should be made in favor of the state and its governmental agencies. While, on one hand, no citizen should be deprived of his property without fair compensation, or be made to contribute more than his equitable proportion of the expense of such improvements, on the other hand, there is no reason or justice in allowing any citizen to obstruct public improvements and progress, unless he is enriched at the public expense. In that event, he would not contribute his fair proportion of the public burden.

\*     \*     \*

"In taking private property for public use, the state is not a trespasser or wrongdoer. It acts rightfully and within its sovereign powers. As we have seen it has the power to take private property for purely public purposes without compensation; but it has seen fit, in justice and equity, to guarantee just compensation. But it guarantees nothing more. The word 'compensation' seems to have been used advisedly. It means the balancing of things against each other; the balancing of benefits against loss and damage. *Young v. Harrison,* 17 Ga., 30, 42. Therefore, when part of a tract is taken, just compensation cannot be determined without considering the manner, purpose, and effect of the taking upon the remainder, in so far as these produce benefit as well as loss and damage, and if the former exceeds the latter, just compensation has been made.

" \*    \*    \* While the decisions of the courts of the different states, construing practically the same constitutional provisions, are conflicting, \*    \*    \* we venture to think that the conclusion which we have reached \*    \*    \* is sustained by the weight of reason and authority. It is the rule adopted by the Supreme Court of the United States and a majority of the states, and it has the approval of the most eminent text-writers." (Citing authorities.)

It is evident that there must be a final determination of the amount of just compensation to be made, which can only

be done under the provisions of the Act of the Legislature, which in this instance provides that it may be determined in one of two ways: by reference of the question to a special Master, or by the verdict of a jury. In the present case, the appellant herself elected to have a jury decide this issue, and the order from which she now appeals expressly provided when and where and by whom this question would be heard, and determined by a jury, but instead of availing herself of the opportunity to settle the question, she has, on her own motion, twice prevented it from being done.

It is plain that the true meaning of Section 17 of Article I of the Constitution is that before the owner of the property to  be condemned is finally deprived of his property, proper provision shall have been made for his first being paid therefor, and it is in our judgment clear that the provision of Judge Sease's order makes clear, timely, and sufficient provision for the accomplishment of this purpose as defined by Section 18 of the Public Works Eminent Domain Law, which follows:

"At any time or after the filing of the petition referred to in Section 5 hereof, and before the entry of final judgment, the petitioner may file with the clerk of the Court a declaration of taking signed by the duly authorized officer or agent of the petitioner declaring that all or any part of the property described in said petition is to be taken for the use of the petitioner.

"Said declaration of taking shall be sufficient if it sets forth: (1) a description of the property, sufficient for the identification thereof, to which there may be attached a plat or map thereof; (2) a statement of the estate or interest in said property being taken; and (3) a statement of the sum of money estimated by the petitioner to be just compensation for the property taken.

"Upon the filing of said declaration of taking and the deposit in Court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said

declaration, and in case the petitioner is an authorized corporation, upon the petitioner giving such security as the Court may direct under the provisions of this section, title to the property specified in said declaration shall vest in the petitioner and said property shall be deemed to be condemned and taken for the use of the petitioner, and the right to just compensation for the same shall vest in the persons entitled thereto. Upon the filing of the declaration of taking, the Court shall designate a day (not exceeding thirty days after such filing, except upon good cause shown) on which the parties in possession shall be required to surrender possession to the petitioner. In the event that the petitioner is an authorized corporation, the Court, prior to directing surrender of possession to the petitioner, shall require such security to be given, in addition to the amount deposited in Court, as will reasonably assure the payment of any amount ultimately determined as the compensation to be paid.

"The ultimate amount of compensation shall be fixed in the manner heretofore specified. If the amount so fixed shall exceed the amount so deposited in Court by the petitioner, the Court shall enter judgment against the petitioner in the amount of such deficiency, together with interest at the rate of six per centum per annum on such deficiency from the date of the vesting of title to the date of the entry of the final judgment (subject, however, to abatement for use, income, rents or profits derived from such property by the owner thereof subsequent to the vesting of title in the petitioner) and the Court shall order the petitioner to deposit the amount of such deficiency in Court."

In our opinion, under the provisions of Article I, Section 17, of the Constitution of 1895, it is left to the Legislature to enact procedure by which private property may be condemned for public use, together with the means by which just compensation is to be made. The Act now under consideration fully provides these essentials. Since, in our opinion, the Act itself is adequate in the issues

now before us, our next consideration is whether the respondent complied with the terms and requirements of the Act itself.

In our opinion, these requirements were fully met. Section 5 of the Act provides that a proceeding may be instituted by the filing of a petition which shall be sufficient if it sets forth the name of the petitioner; a description of the property, sufficient for the identification thereof, to which there may be attached a plat or map thereof; a statement that the acquisition of such property by the petitioner is necessary for a public works project, of which project a brief general description shall be given; a statement that the proceedings are brought under this Act; and a suitable prayer for relief. Each requirement of this section was complied with in the petition of the respondent.

Section 7 of the Act provides that notice of the proceedings shall be given by one publication in a newspaper having a general circulation in each county in which any part of the property sought to be condemned is located, and that such publication shall be at least twenty days and not more than ninety days prior to the date set for the hearing on the validity of the proceedings. As we have seen, the respondent published its notice in the Spartanburg Herald on October 31, 1941, and thereby complied with the provisions as to the time and place of publication.

Following this provision for publication, Section 7 proceeds further to set forth a form with which the notice shall substantially comply. The notice given in the case at bar is practically verbatim in its language as compared with the form given in Section 7 of the Act, and the necessary allegations are properly supplied, followed by the proper execution.

The declaration of taking, filed by the respondent and duly executed by its mayor, complies with the requirements of Section 18, hereinabove quoted. As has been noted, this section provides that the declaration of taking shall set forth "a statement of the sum of money es-

timated by the petitioner to be just compensation for the property taken," following which the petitioner shall deposit in the Court, to the use of the persons entitled thereto, the amount of the estimated compensation stated in the declaration. In compliance with this provision, the declaration of the respondent in this case contained the following allegation, which is certainly, to our minds, sufficient in form to bring it within the intent of the above provision of the Act:

"That the value of the property being taken by petitioner hereunder does not exceed One Hundred Dollars ($100); and that said sum is just compensation for the property taken and has been deposited in case (doubtless meaning cash) by petitioner with the Clerk of this Court for the use of the persons entitled thereto."

Thereafter, when the order of Judge Sease required that the respondent give security in the additional sum of $3,000-.00, under the provisions of Section 18 of the Act, the respondent promptly deposited the required amount with the Clerk of Court in full accordance with the said order.

The appellant argues that the respondent failed to comply with the terms of the law in that it entered into possession of the property in the absence of the designation by the Court of a day appointed therefor. Section 18 provides:

" * * * Upon the filing of the declaration of taking, the Court shall designate a day (not exceeding thirty days after such filing, except upon good cause shown) on which the parties in possession shall be required to surrender possession to the petitioner."

The declaration of taking was served by the respondent on the appellant on November 1, 1941, along with the other papers required by the Act, together with a notice of a preliminary hearing on November 24, 1941, before Judge Sease. The appellant appeared by counsel and filed her return and other objections. Following the hearing on the above named

date, Judge Sease filed his order on December 26, 1941, containing the following provision:

"I find  *  *  *  that the City of Spartanburg has the right to take title to and possession of the property condemned prior to final judgment as authorized by Section 18 of the Act. Upon filing of the Declaration of Taking and the deposit being made in Court, title to the property being condemned became vested in fee simple in the City of Spartanburg,  *  *  *."

*     *     *

"  *  *  *  I find that the city should forthwith make a deposit or file its bond in this Court in the amount of $3,-000, conditioned to secure the payment of any amount ultimately determined as the compensation to be paid. Upon such deposit being given as security for the payment of the compensation to be paid, the City of Spartanburg shall be entitled to immediate possession of the property taken, and possession thereof shall be surrendered to the city so that commencement of work on this much-needed public project shall not be delayed."

The respondent deposited the sum of $3,000.00 with the Clerk of Court, in accordance with the above order, on December 31, 1941, and entered into possession of the property on January 12, 1942, within thirty days from the date of the order, as contemplated by the Act.

Although the order of Judge Sease did not stipulate that the respondent should enter into possession of the property on the 12th day of January, 1942, it did stipulate that the appellant should surrender possession to the respondent immediately upon the bond being given. Since the respondent did enter into possession within the time named in the Act, and in view of the provision of the order that the respondent would be entitled to immediate possession upon its giving the required bond or deposit, we think there was a compliance with the provision of the Act that the Court designate a day within thirty days after the filing of the order on

which the parties in possession shall be required to surrender possession. This is particularly true in view of the evident fact that this provision was enacted so that the petitioner might not be delayed more than thirty days from the filing of the order before obtaining possession. Other provisions in the Act are for the protection of the land owner, but this provision is for the benefit of the condemnor.

The next question for our determination is whether the appellant is entitled to have the sum of $3,000.00 now in the possession of the Clerk of Court as a deposit or security, paid to her as compensation for the taking of her property, without the value of such property being first determined by a jury.

The order of Judge Sease contained the following provision: "The returns of several of the defendants raise the issue of the value of the property being taken and the amount of just compensation to be received, and they have demanded a trial by jury of these issues. Of course, the value stated by the city in its declaration is not final or binding upon defendants, and they have the right to a legal determination of this issue by a jury. The defendants have the further right to require that such security shall be given, in addition to the amount deposited in Court, as will reasonably assure the payment of any amount ultimately determined as the compensation to be paid."

After the deposit of $3,000.00 had been made, the appellant made a motion for an order directing the Clerk of Court to pay to her solely, as the owner of one of the pieces of property being condemned, the entire amount which had been deposited as bond. The motion was denied by Judge Sease, who, instead, set the case for trial before a jury to determine the issue of the amount of compensation to which appellant was entitled.

Under the allegations of this case, there is a wide difference between the contentions of the parties as to the value of the condemned property of the appellant. The fourth para-

graph of the respondent's petition alleges that in the improvement and widening of the street the same would be paved, and that concrete curb and gutters would be constructed, that concrete sidewalks would be laid, that all driveways, entrances, steps, terraces, walls, embankments and shrubbery affected by the widening would be moved and restored to substantially their same condition, all without expense to the abutting property owners, and alleged that all of the foregoing improvements would increase the value of the property, so that it would be more valuable after such improvement than theretofore. As against the foregoing allegations of the respondent, the appellant's affidavit discloses her estimate of damage thus done to her as a result of the condemnation in an amount between $2,500.00 and $3,000.00. In fact, she herself demanded a jury trial to fix the amount of compensation due her. The Circuit Judge has no authority, under the law, to determine the issue of just compensation, which can only be determined by a jury or by reference of the case to a special Master; but the Circuit Court could, and did, require that security be given to insure the payment of such compensation as might be determined by a jury. It is unthinkable that the amount of $3,000.00 could properly be turned over to the appellant as the amount of her damage when no determination of the amount of such damage has been had, and when there is such a vast difference of opinion between the parties as to what her compensation should be.

The orders which Judge Sease has filed in the case show clearly that he has in no way attempted to adjudicate the amount to be paid to the appellant, nor would such an adjudication have been within his province if he had attempted it.

Furthermore, the contention of the appellant that the bond or security should now be turned over to her solely, is in complete disregard of the fact that the deposit of the $100-.00, and of the $3,000.00, were not solely for the benefit of the appellant. These sums were deposited to secure the pay-

ment of just compensation to all defendants in the case. If the entire amount on deposit should be turned over to the appellant, there would be nothing left to secure the payment of compensation to any of the other defendants in the condemnation proceeding.

The appellant, on January 24, 1942, made a further motion before Judge Sease for a stay of proceedings in the within matter pending the termination of her appeal to this Court from Judge Sease's order of December 26. Upon hearing the motion, and after argument by counsel for both parties, Judge Sease ordered that this motion not be allowed. The appellant now excepts to this ruling. Section 23 of the Act under consideration provides: "The taking of an appeal shall not operate to stay the proceedings under this Act except when the person or persons appealing shall have obtained a stay of the execution of the judgment or order appealed from, * * *."

The granting of a motion for a stay of proceedings rests entirely within the discretion of the trial Judge. Counsel for appellant have neither alleged nor sought to show that the Circuit Judge abused his discretion or his authority in refusing the appellant's motion. Nor have counsel for appellant shown any good reason why a stay of proceedings should have been granted, nor do we see any reason why a supersedeas should have been granted, particularly since the real issue in the present case is the amount of compensation to be paid appellant for the part of her property which was condemned.

In the case of *Brown v. Buttz,* 15 S. C., 488, at page 492, this Court said: "Section 360 of the code authorizes a party, after giving notice of appeal from a judgment rendered against him, directing the payment of money, to apply to the presiding judge to stay execution; but.this section does not require, in mandatory terms, that the application shall be granted. It seems to be a matter of discretion with the judge."

Although the case at bar differs from the above-quoted case in that the defendant in this case was not appealing from a money judgment, the rule that the granting of a supersedeas is within the discretion of the Court nevertheless applies here. In 60 C. J., 1160, it is stated: "The order for a supersedeas * * * is but the declaration of the Judge that it is fit under the circumstances that a supersedeas should issue; and may be recalled by him at any time before it is complied with, if upon consideration he deems it improper or improvident."

All other questions and exceptions raised by the appellant have been carefully considered, and although all of the arguments have not been specifically discussed herein, they are, nonetheless disposed of by the matters and things above said. Certain other questions were raised by the return of the appellant, but which were not perfected upon appeal, and covering which there are no exceptions and arguments, and therefore such issues have not been considered here. All exceptions are overruled, and the orders appealed from are affirmed.

Judgment affirmed.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES, and CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE, concur.