## 17535

Arthur W. SHUMAKER, Henry T. Shumaker, Annie Shumaker Murray, Lillian Shumaker Edwins, and Mamie Shumaker Bookhart, Appellants, v. Harry D. SHUMAKER, Respondent

(108 S. E. (2d) 682)

422

*Messrs. Nash & Wilson,* of Sumter, and *W. R. Symmes,* of St. Matthews, *for Appellants,*

*L. Marion Gressette, Esq.,* of St. Matthews, *for Respondent,*

May 14, 1959.

TAYLOR, Justice.

This appeal arises out of an action brought in the Court of Common Pleas for Calhoun County for partition of three small tracts of farm land, neither of which is contiguous to another.

H. J. Shumaker, who died in 1937, devised by will the property in question to his widow, Mary Ella Shumaker, for life and at her death to his children. The widow died in 1956, leaving seven children by H. J. Shumaker, who with one exception are parties to this action, one sister having deeded her interest to defendant making his interested an undivided 2/7ths in the premises. The matter was referred to a Special Referee who recommended that Harry Shumaker's claim for reimbursement for betterments be denied. Upon exceptions to the Referee's Report, the Honorable James M. Brailsford, Resident Judge, reversed the Special Referee and held that the defendant is entitled to share in the enhanced value of the twenty-one acre tract, such enhancement being attributable to the construction of a dwelling thereon, in the proportion that his contribution bore to the entire cost of construction and left the action open for determining specific questions of fact.

The dwelling occupied by the mother had become uninhabitable. The children agreed that timber on one of the tracts should be sold and the proceeds used to make needed repairs. The timber brought between $900.00 and $950.00. Defendant, who was the only single member of the family and who was then living with his mother, took charge of the project. Finding it impossible to repair the old house because of its dilapidated condition, he dismantled it completely, salvaged the useable material, and, with others who had been employed to assist him, rebuilt the dwelling. In addition to the proceeds from the timber sale, defendant claims to have expended $813.65 of his own funds and asks reimbursement of this amount plus an allowance of $10.00 a day for fifty-six days for his labor. Pertinent portions of the testimony are as follows:

"Q. Did you ever tell them what you spent? A. I am sure that the three present knew what was spent.

\* \* \*

"Q. During the course of the building did you ever discuss this with them? A. I did not.

"Q. Why did you put additional money on the place? A. So my mother could have a place to stay.

\* \* \*

"Q. And you lived there 10 years? A. Yes.

"Q. The first time you ever made demand was when this partition was started? A. Yes.

\* \* \*

"Q. Why did you go ahead with the building of the house without asking your brothers' and sisters' permission? A. I was forced to do it so that mother could have a place to stay. And I knew it was no use to ask them to help.

\* \* \*

"Q. Did you tell Mr. Shumaker you needed more money? A. He knew it.

"Q. Did you tell Mr. Arthur Shumaker? A. He knew it, too. He told me to put in the bathroom and I told him to give me the money.

"Q. What about your sisters? A. I could not go to Philadelphia and Detroit to tell them.

"Q. When did you tell them? A. One was home in June and one in August."

Mrs. Mamie S. Bookhart testified:

"A. Yes, I was there and I know he worked hard. After the house was built he gave the check books to me and he sent money to paint the house. I know he spent this."

It is evident from the testimony that the improvements were made in order that the life tenant (the mother) might have a home, which was the purpose to which the property was being put. Defendant had not sought the express consent or contributions from his brothers and sisters for the expenditures over and above the amount of the proceeds of the timber sale. It is further evident, however, that some of the plaintiffs collaborated with defendant at the time; that approximately eleven years have passed since the house was constructed; that all were in and out of the house from time to time and had reason to observe that the dwelling which

was in such a state of disrepair as to be uninhabitable and valued at $300.00 had been improved to where it was valued at $3,000.00, and they knew or should have known that the expenditure of between $900.00 and $950.00 was insufficient to bring about such enhancement in value.

Defendant's claim for betterments was disallowed by the Special Referee because of failure to allege and prove facts permitting him relief under the betterment statute, Section 57-407, Code of Laws of South Carolina 1952. Plaintiffs now concede that this was a misconception of the defendant's rights which must be determined under the equitable principles applicable to partition among tenants in common but contend that these principles do not entitle defendant to relief because:

"1st. The dwelling was erected during the existence of the life estate and appellant's contribution toward it was made as a volunteer for the benefit of his mother and not as a tenant in common.

"2nd. The appellant did not pay the entire cost of the improvement, which was contributed to by the other parties through the sale of timber."

"The rule appears well settled in this state that the right of a cotenant in possession of the common property to be reimbursed for improvements made by him, or in the partition to have the portion of the land improved by him alloted to him, is exceptional, and to maintain it the improving tenant must establish: (1) That he was in possession under an honest belief of ownership; or (2) that to disallow his claim would be inequitable; and (3) that the allowance would result in no inequity to the interests of his co-tenants." *Bank of Swansea v. Rucker,* 156 S. C. 29, 152 S. E. 712, 714. And co-ownership oft occurs in connection with rights and possibilities of future possession, as in instant case. See, Tiffany, Real Property, 3d Ed., Vol. 2, Sec. 417; also, *Tedder v. Tedder,* 109 S. C. 451, 96 S. E. 157; *Guignard v. Corley,* 147 S. C. 12, 144 S. E. 586, 62 A. L. R. 533.

"The general rule is that a joint tenant who, at his own expense, places permanent improvements upon the common

property, is entitled in a partition suit to compensation for the improvements whether the co-tenants assented thereto or not. Such compensation is allowed not as a matter of legal right but purely from the desire of a court of equity to do justice and to prevent one tenant from becoming enriched at the expense of another. In the absence of consent, the amount of compensation is estimated by and limited to the amount by which the value of the common property has been enhanced. * * *

"The same reasons apply to a case where one remainderman, at his own expense, has placed permanent improvements upon the common property during the possession of the life tenant. While no Virginia case is cited on the point, the rule has been applied to such remaindermen in West Virginia and other States." *Dalgarno ·v. Baum,* 1944, 182 Va. 806, 30 S. E. (2d) 559, 560. See Annotations: 98 A. L. R. 859-860; 40 A. J. 40; 1 A. L. R. 1206; 122 A. L. R. 242.

"In passing on a claim for contribution arising out of the erection of improvements, all the circumstances of the case should be taken into consideration. Where it appears that the co-tenant making the improvements has acted in good faith, without design to injure or exclude his cotenants, and that the improvements are permanent and useful or necessary to the enjoyment of the property, the court may allow him the amount which represents the increase in the value of the estate, and not alone the amount of their actual cost. A similar principle applies where it is shown that the improvements amount to nothing more than restorations or betterments that any co-owner might be expected to join in making. But it is clear that improvements made solely for the purpose of increasing the occupying tenant's business, or with the design of causing the other tenants to abandon their interests in the property by reason of the expense, will not be allowed." 14 A. J. 117, Sec. 49.

The betterments or improvements are directly attributable to the proceeds of the sale of timber, contributed by all, to-

gether with defendant's contribution of money and labor, resulting in the enhancement of the value of the property. To deny defendant a proportionate reimbursement will result in his contribution being thrown into the common pot, although improvements, which were useful and necessary to the enjoyment of the property and permanent in nature, were made in good faith without any design to injure or exclude others who were similarly situated. This would result in an inequity in that plaintiffs would become unjustly enriched.

Instant case does not, as so many have, involve the question of one who erroneously believing himself to be the owner of all outstanding interest in the property made improvements thereon during the continuance of the life estate, but the equitable principles brought to play are or should be the same. Plaintiffs who come into Court invoking the aid of equity should be required to do equity in order that justice might be done between the parties.

Plaintiffs also contend that recovery cannot be had by defendant because he did not pay the entire cost and cite *Bank of Swansea v. Rucker, supra,* wherein it is stated that one of the essential elements of fact was that no part of the expense was contributed by others while here all contributed. It is true that all contributed to the extent of their interest in the amount brought by the sale of the timber, but defendant here seeks only the amount expended by him personally over and above his interest in the timber and compensation for his labor and there is no evidence of any contributions to either. This contention is without merit.

From our study of the cases involving similar problems, we are convinced that they are fraught with much difficulty and each case must be considered in the light of its peculiar circumstances. Under the circumstances heretofore related, we are of opinion that the Order appealed from should be affirmed, and It Is So Ordered.

Affirmed.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ., conc.