## THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Polly Thompson, Respondent,

v.

Cathy Swicegood, Appellant.

Appellate Case No. 2015-001860

_____

Appeal From Oconee County
Diane Schafer Goodstein, Circuit Court Judge
Ellis B. Drew, Jr., Master-in-Equity

_____

Opinion No. 5736
Heard September 18, 2019 – Filed July 1, 2020

_____

## AFFIRMED AS MODIFIED

_____

John G. Reckenbeil, of Law Office of John G.
Reckenbeil, L.L.C., of Mauldin, and J. Falkner Wilkes,
of Greenville, for Appellant.

Margaret A. Chamberlain, of Chamberlain Law Firm,
LLC, of Greenville, and Melissa Hope Moore, of Law
Office of Melissa H. Moore, LLC, of Fountain Inn, for
Respondent.

_____

**LOCKEMY, C.J.:** Cathy Swicegood appeals the master-in-equity's order of
partition, arguing the master erred by (1) refusing to consider the issue of the
parties' alleged common-law marriage and stay the action pending a resolution of
that issue in family court, (2) excluding evidence proving her contributions to
jointly owned real property, (3) determining her contribution to such property, and

(4) failing to apply the correct analysis when determining the parties' interests in the property.  We affirm as modified.

**FACTS**

Polly Thompson filed this action in circuit court for partition and ouster in March 2014.  She alleged she and Swicegood held title to two properties—a home in Westminster, South Carolina (the Lake Hartwell home) and a condominium in Hilton Head, South Carolina (the Hilton Head condo)—as joint tenants.  Thompson alleged she was entitled to sole ownership and title as to both properties.

Swicegood then filed a summons and complaint in family court alleging a common-law marriage existed between the parties and seeking, among other things, recognition of the separation of the parties, an award of separate support and maintenance, and equitable division of marital property.[1]  Swicegood moved to dismiss or, alternatively, stay the partition action, arguing she sought an order from the family court declaring she and Thompson were married by common law.  Thereafter, the family court dismissed Swicegood's complaint for lack of subject matter jurisdiction, finding that pursuant to the then-existing laws banning same-sex marriage in this state, no common-law marriage existed as a matter of law.  Swicegood appealed the family court's order.[2]  Meanwhile, in October 2014, the circuit court denied Swicegood's motion to dismiss or stay the partition action, finding there was no just cause for granting a stay.  The court reasoned in part that Thompson filed her petition in circuit court first and Swicegood's subsequent filing in family court did not remove jurisdiction from the circuit court.

The partition action proceeded to a hearing before the master-in-equity in March 2015.  At the outset of the hearing, Thompson moved to exclude any evidence or argument concerning whether the parties were married and any evidence regarding "sweat equity" in any property other than the two properties at issue in the partition action.  Swicegood again moved to stay the proceeding, arguing that after the family court dismissed the case for lack of subject matter jurisdiction and the circuit court denied her previous motion to stay, the United States District Court

---

[1] The couple's primary residence was not a property at issue in the partition action.
[2] We decided this appeal in *Swicegood v. Thompson*, Op. No. 5735 (S.C. Ct. App. filed July 1, 2020), which includes a complete procedural history of the family court matter.

had overturned South Carolina's statutory prohibition of same-sex marriage.[3]  The master denied Swicegood's motion to stay and granted Thompson's motion to exclude evidence of the alleged marriage, reasoning he expressed no opinion as to whether there was a marriage, and even if there were, the matter was "still a partition action" according to the pleadings.  Swicegood argued she was entitled to sweat equity because during the thirteen-year relationship, a significant amount of assets and sweat equity culminated into the purchase of these properties and she "and others" took actions to bring value to these properties.  However, the master granted Thompson's motion to exclude evidence of any sweat equity Swicegood may have had in any property other than the Lake Hartwell home or Hilton Head condo.

Thompson purchased the Hilton Head condo in June 2013 for $372,500.  The deed listed both parties as owners.  Thompson paid the down payment with an inheritance she received from her parents, and Swicegood contributed no funds.  The mortgage on the Hilton Head condo was in Thompson's name only, and she paid all of the mortgage payments on the property as well as all regime fees, insurance premiums, utility bills, and fitness club fees.  According to Thompson, the Hilton Head condo required some improvements, such as wallpaper removal, painting, plumbing repair, and replacing light fixtures, switches, and the washer and dryer.  She stated she paid for all of the labor and construction associated with these improvements, and although she acknowledged Swicegood performed some of this labor, she stated she paid Swicegood for her work.  Thompson explained she rented out the Hilton Head condo when possible and had earned $22,000 in rental income since purchasing the home.  Thompson testified she contributed $142,477.01, less the rental income, to the Hilton Head condo.

The Lake Hartwell home consisted of two lots: Lot 58 and Lot 59.  Thompson purchased the first lot, Lot 59, in May 2010 for $38,500; she paid a down payment of $10,209.98 and obtained a mortgage for the balance of the purchase price.  Thompson purchased the second lot, Lot 58, in July 2012 for $35,000 and paid the full purchase price with her inheritance.  Thompson then had a home constructed on the lots.  Swicegood contributed $22,000 of the total $28,678.43 down payment on the construction of the home, and Thompson contributed the remaining $6,678.43.  Thompson obtained a mortgage for the remaining $151,500 of the purchase price.  She testified the $10,209.98 and $6,678.43 she paid for the purchase and construction of the Lake Hartwell home came from her checking

---

[3] *See Condon v. Haley*, 21 F. Supp. 3d 572, 587 (D.S.C. 2014) (striking down South Carolina's ban on same-sex marriage as unconstitutional).

account, and none of those funds came from Swicegood.  Additionally, Thompson paid all mortgage payments, homeowners' association fees, taxes, and insurance premiums on the property.  She explained she hired a builder to build the home and paid for other construction and improvements to the property.  Thompson stated she paid $42,735.41 for the construction and improvements, including $7,000 paid on Swicegood's Lowe's credit card and several checks for Swicegood's labor.  Thompson again acknowledged Swicegood performed some labor and agreed she was often present during the building of the Lake Hartwell home but insisted she paid Swicegood for this work.

Swicegood moved into the Lake Hartwell home in December 2013 after the couple separated.  Thompson alleged Swicegood changed the locks and denied her entry to the home thereafter.  During this time, Thompson continued to pay the mortgage, homeowner's association fees, insurance, and taxes on the home.  She claimed $14,143.77 in damages due to Swicegood's ouster but later stipulated she sent Swicegood a letter in December 2013 giving her permission to live there.

Thompson stated that in exchange for Swicegood's work on the Hilton Head condo, she gave her a 2009 Buick and paid her with checks.  She conceded Swicegood paid her $9,500 for the Buick but stated it was worth "at least $18,000." Thompson acknowledged she previously owned a villa in Hilton Head, which she purchased in 2003 with proceeds from the sale of stock she owned.  She stated she sold this property in December 2013, it was titled in her name only, and no funds from its sale were applied to any other purchase.  Thompson admitted Swicegood transferred title in property she owned to Thompson by quitclaim deed in 2010.  Although the master refused to admit evidence concerning this transfer, Thompson acknowledged the $22,000 Swicegood contributed to the purchase of the Lake Hartwell home came from the sale of that property.

Swicegood testified she operated a business that provided landscaping and interior design services.  She stated she and Thompson continually tried to "flip" properties in order to have "nice places" to live in upon retirement.  Swicegood attempted to explain she contributed labor to the villa that Thompson previously owned, and Thompson objected.  Swicegood conceded, acknowledging the master's earlier ruling.  Swicegood explained she removed carpet, painted, changed outlets and switches, created window treatments, covered cornice boards, and replaced new toilets, faucets, and towel racks in the Hilton Head condo.  She stated she had furniture reupholstered, purchased bedding, and decorated.  Swicegood testified it took seven days to flip the condo.  She stated she paid someone $1,300 to complete plumbing and electrical work.  Swicegood testified she also touched up paint and

replaced light bulbs when she stayed at the Hilton Head condo. She provided an "invoice," consisting of a summary of the work she completed at the Hilton Head condo, which totaled $17,490. Of this amount, Swicegood estimated she was owed $5,910.91. However, she admitted the invoice was not created at the time the work was done; rather, she "rewrote" all of her invoices for use at the hearing. Swicegood confirmed she had no documentation showing her payment for any of the materials listed on the invoice. She averred the refurbishing of the Hilton Head condo allowed the parties to earn higher rental income on the property. Swicegood testified she "drew the plans" for the Lake Hartwell home and was present at the home "every single day" during its construction. She agreed Thompson had paid her for work on the Lake Hartwell home and the Hilton Head condo, but she denied she had been paid for all of her work. Swicegood identified several checks she received from Thompson. She agreed the checks ranged from $1,000 and $5,000 but stated some checks were for materials. She acknowledged Thompson paid her "to handle the affairs" during the building of the Lake Hartwell home in Thompson's place. Swicegood admitted she changed the locks at the Lake Hartwell home after she moved in because Thompson continued to come to the home even though their attorneys had asked her not to.

Swicegood also presented the testimony of Stephanie Computaro, who testified Swicegood did "the majority of the work" during the refurbishing of the Hilton Head condo, and "as far as the hands on construction" and "the vision, buying of the materials to do those jobs, that was a hundred percent [Swicegood]."

Following the partition hearing, the parties made their offers to purchase the properties. They agreed the mortgage balance for the Lake Hartwell property was $143,407.75, with equity of $67,742, and the mortgage balance for the Hilton Head condo was $269,100.57, with equity of $120,599. Thompson offered to purchase the Hilton Head condo for $275,100.57, and the Lake Hartwell home for $188,407.75, while Swicegood offered to transfer title of the Hilton Head condo to Thompson in exchange for Thompson transferring title of the Lake Hartwell property to Swicegood. The master found Thompson made the greater offer to purchase. Because the remaining balance on mortgage for the Hilton Head condo was $269,100.57, the master determined there was $6,000 in proceeds from the Hilton Head condo to be divided between the parties. Likewise, because the remaining balance on the Lake Hartwell home was $143,407.75, the master determined there was $45,000 in proceeds from the Lake Hartwell home to be divided between the parties.

The master concluded that with respect to the Hilton Head condo, Thompson paid the entire down payment on the property, every mortgage payment, all regime fees, all homeowner's insurance premiums, all taxes, and all fitness club dues and cable fees. He found Thompson's contribution totaled $129,838.70, and though Swicegood contributed sweat equity in the form of interior decorating, the amount of work she performed was disputed, and Thompson presented evidence she paid Swicegood for her labor and materials. The master found the equity in the condo was $120,325, and Swicegood contributed nothing financially to the property and was entitled to no right, title, or interest in that property. With respect to the Lake Hartwell home, the master concluded Swicegood paid $22,000 of the down payment on the home and Thompson paid $45,679.21 for the two lots and $6,678.43 of the down payment on the home. The master determined Thompson paid every mortgage payment, all property owners' association dues, all homeowner's insurance premiums and all taxes. He found Swicegood contributed sweat equity in the form of interior decorating and design, but the amount of work she performed was disputed and Thompson presented evidence she paid Swicegood for her labor and materials. He concluded Thompson contributed $129,838.70 and Swicegood contributed $22,000 towards the Lake Hartwell home, and the equity in the home was $67,742.25. The master found Thompson's contributions far exceeded both Swicegood's contributions and the equity in the property. The master found there was a tremendous disparity between the parties' contributions to the property and Swicegood had no right, title, or interest in the Lake Hartwell property.

As to both properties, the master found the disparities between the parties' contributions to the acquisition and maintenance of the properties was in favor of Thompson and awarding Swicegood any interest in the property would be unjust and inequitable. Thus, the master awarded Thompson full right, title, and ownership of both properties, and awarded the remaining $6,000 and $45,000 to Thompson. The master denied Thompson's claim for ouster, finding although Swicegood committed ouster Thompson failed to establish damages. Swicegood filed a motion to reconsider, which the master denied. This appeal followed.

## STANDARD OF REVIEW

"The question of subject matter jurisdiction is a question of law." *Porter v. Labor Depot*, 372 S.C. 560, 567, 643 S.E.2d 96, 100 (Ct. App. 2007). "This Court reviews all questions of law de novo." *Fesmire v. Digh*, 385 S.C. 296, 302, 683 S.E.2d 803, 807 (Ct. App. 2009). "A partition action is an equitable action and, as such, we may review the evidence to determine facts in accordance with our own

view of the preponderance of the evidence." *Zimmerman v. Marsh*, 365 S.C. 383, 386, 618 S.E.2d 898, 900 (2005). "However, this broad scope of review does not require this court to disregard the findings at trial or ignore the fact that the trial judge was in a better position to assess the credibility of the witnesses." *Laughon v. O'Braitis*, 360 S.C. 520, 524-25, 602 S.E.2d 108, 110 (Ct. App. 2004). On the other hand, "evidentiary and procedural rulings of the family court are reviewed for an abuse of discretion." *Brown v. Odom*, 425 S.C. 420, 429, 823 S.E.2d 183, 187 (Ct. App. 2019). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Burke v. Republic Parking Sys., Inc.*, 421 S.C. 553, 558, 808 S.E.2d 626, 628 (Ct. App. 2017) (quoting *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006)).

## LAW/ANALYSIS

### I. Denial of Motion to Stay

Swicegood argues the circuit court erred by refusing to consider the issue of marriage and stay the partition action pending a resolution of the marriage issue. She contends that if the courts were to determine she and Thompson were married, the order of partition would be void for lack of subject matter jurisdiction because the family court would have exclusive jurisdiction to determine their respective interests in the properties. Swicegood further asserts the court's refusal to stay the matter prejudiced her because the family court would have applied a different analysis in determining the parties' interests in the properties. We disagree.

"The granting of a motion for a stay of proceedings rests entirely within the discretion of the trial [court]." *City of Spartanburg v. Belk's Dep't Store of Clinton*, 199 S.C. 458, 20 S.E.2d 157, 167 (1942). Section 63-3-530(A)(2) of the South Carolina Code (2010 & Supp. 2019) provides,

> The *family court has exclusive jurisdiction* . . . to hear and determine actions for divorce a vinculo matrimonii, separate support and maintenance, legal separation, and in other marital litigation between the parties, and for settlement of all legal and equitable rights of the parties in the actions in and to the real and personal property of the marriage . . . .

(emphasis added). "[M]arital property" is defined as "all real and personal property which has been acquired by the parties during the marriage and which is

owned as of the date of filing or commencement of marital litigation . . . ."  S.C. Code Ann. § 20-3-630(A) (2014).  "The [family] court does not have jurisdiction or authority to apportion nonmarital property."  S.C. Code Ann. § 20-3-630(B) (2014); *see also Tipton v. Tipton*, 351 S.C. 456, 459, 570 S.E.2d 195, 196 (Ct. App. 2002) (holding the family court "lacked subject matter jurisdiction to determine the parties' property rights in any way" when the family court found no common-law marriage existed between the parties and the appellant did not appeal that finding).

"Under South Carolina law, the Court of Common Pleas has jurisdiction in all cases of real and personal estates held in joint tenancy or in common to make partition in kind or by allotment."  *Eichor v. Eichor*, 290 S.C. 484, 487, 351 S.E.2d 353, 354 (Ct. App. 1986).  "[P]roperty held in joint tenancy is subject to partition."  *Smith v. Cutler*, 366 S.C. 546, 551, 623 S.E.2d 644, 647 (2005).  "An action for partition of undivided interests is not marital litigation, and thus is not within the jurisdiction of the family court."  *Gilley v. Gilley*, 327 S.C. 8, 10, 488 S.E.2d 310, 312 (1997) (quoting *Eichor*, 290 S.C. at 487, 351 S.E.2d at 355).

As a threshold matter, we find the circuit court had subject matter jurisdiction to hear the partition action.  *See Eichor*, 290 S.C. at 487, 351 S.E.2d at 354 ("Under South Carolina law, the Court of Common Pleas has jurisdiction in all cases of real and personal estates held in joint tenancy or in common to make partition in kind or by allotment.").  In *Swicegood*, Op. No. 5735, we concluded no common-law marriage existed between the parties as a matter of law and affirmed the family court's dismissal of Swicegood's complaint based on lack of subject matter jurisdiction.  Absent a marriage, there can be no marital property.  The family court therefore lacked subject matter jurisdiction to divide the parties' property.  Thus, the circuit court had subject matter jurisdiction over the partition action.

Next, we find the master was not obligated to grant a stay of the partition action under the circumstances of this case.  *See City of Spartanburg*, 199 S.C. 458, 20 S.E.2d 157 ("The granting of a motion for a stay of proceedings rests entirely within the discretion of the trial [court].").  The parties' marital status in and of itself does not affect the circuit court's subject matter jurisdiction over a partition action between such parties.  *See Gilley*, 327 S.C. at 10, 488 S.E.2d at 312 ("An action for partition of undivided interests is not marital litigation, and thus is not within the jurisdiction of the family court." (quoting *Eichor*, 290 S.C. at 487, 351 S.E.2d at 355)).  Here, the family court dismissed the complaint for lack of subject matter jurisdiction, finding the parties had no common-law marriage as a matter of law pursuant to state laws prohibiting same-sex marriage, which were still in effect

at the time. *See* S.C. Code Ann. § 20-1-15 (2014) ("A marriage between persons of the same sex is void ab initio and against the public policy of this State."); *see also* S.C. Const. art. XVII, § 15 ("A marriage between one man and one woman is the only lawful domestic union that shall be valid or recognized in this State"); S.C. Code Ann. § 20-1-10 (2014) (stating "[a]ll persons, except . . . persons whose marriage is prohibited by this section, may lawfully contract matrimony"); *id.* (stating "[n]o man shall marry . . . another man" and "[n]o woman shall marry . . . another woman"). Thus, at the time the circuit court and master ruled upon Swicegood's motion to stay, the family court lacked subject matter jurisdiction to determine the parties' property rights. Under these circumstances, we find the master did not err by refusing to stay the partition action pending resolution of the family court matter.

## II. Partition

Swicegood argues the master erred in determining the value of each party's contribution to the properties. She asserts the master erred by excluding evidence of the value she contributed to each property, including evidence relating to properties other than the Lake Hartwell home and Hilton Head condo. Swicegood contends she and Thompson purchased and "flipped" multiple properties, culminating in the purchase of the Hilton Head condo. She asserts her efforts in renovating properties the couple formerly owned attributed to the appreciation realized from the sale of those properties, and the "net gain" therefrom was "funneled into" the funds Thompson used to purchase the Hilton Head condo and Lake Hartwell home. Swicegood argues the master excluded evidence of the chain of sales that would have demonstrated such accumulation of equity. Further, she contends the master erred by failing to "adequately consider" her contribution of "sweat equity" of $20,000 in the Lake Hartwell home. Thus, she argues the master's decision should be reversed and remanded for a determination of the full value of her contributions to and interest in the properties based on all of the relevant evidence. We disagree.

### A. Exclusion of Evidence

"The admission or exclusion of evidence is a matter within the trial court's sound discretion, and an appellate court may only disturb a ruling admitting or excluding evidence upon a showing of a 'manifest abuse of discretion accompanied by probable prejudice.'" *Burke*, 421 S.C. at 558, 808 S.E.2d at 628 (quoting *State v. Commander*, 396 S.C. 254, 262-63, 721 S.E.2d 413, 417 (2011)). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary

support or are controlled by an error of law." *Id.* (quoting *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006)). "The general rule is that a joint tenant who, at his own expense, places permanent improvements *upon the common property*, is entitled in a partition suit to compensation for the improvements whether the co-tenants assented thereto or not." *Shumaker v. Shumaker*, 234 S.C. 421, 425-26, 108 S.E.2d 682, 685 (1959) (emphasis added) (quoting *Dalgarno v. Baum*, 30 S.E.2d 559 (Va. 1944)). "In the absence of consent . . . the amount of compensation is estimated by and *limited to* the amount by which the value of the common property has been enhanced." *Ackerman v. Heard*, 287 S.C. 626, 629, 340 S.E.2d 560, 562 (Ct. App. 1986).

First, we find the master did not abuse his discretion in excluding evidence of Swicegood's contributions to former properties. *See Shumaker*, 234 S.C. at 425-26, 108 S.E.2d at 685 ("The general rule is that a joint tenant who, at his own expense, places permanent improvements *upon the common property*, is entitled in a partition suit to compensation for the improvements whether the co-tenants assented thereto or not." (emphasis added) (quoting *Dalgarno*, 30 S.E.2d 559)). Here, the only properties at issue in the partition action were the Lake Hartwell home and the Hilton Head condo. Swicegood testified she and Thompson "flipped" several properties and ultimately purchased the Lake Hartwell home and Hilton Head condo; however, she proffered no evidence as to any specific value realized from her work on previous properties. Neither did she proffer evidence that Thompson used proceeds from any prior sale of such properties to purchase the Lake Hartwell home or the Hilton Head condo. Rather, Thompson testified she paid the entire down payment on the Hilton Head condo and the entire purchase price for Lot 58 with the inheritance she received from her parents. She stated the $10,209.98 and $6,678.43 she paid on the Lake Hartwell home came from her checking account. Thus, we find the master did not err by excluding evidence of any indirect contributions Swicegood made to properties other than the two properties at issue in this case.[4]

Further, as evidenced by the master's order, the master admitted and considered evidence of Swicegood's direct contributions to the Lake Hartwell Home and the

---

[4] We note Thompson admitted Swicegood's direct contribution of $22,000 for the purchase of the Lake Hartwell home came from the sale of property Swicegood owned. However, the master considered this direct contribution in reaching its conclusion, and we likewise consider this contribution in our review of the master's findings.

Hilton Head condo, which consisted of testimony as well as exhibits documenting her contributions of labor and materials.

## B. Swicegood's Contributions[5]

Although we review actions in equity de novo, we are not required to disregard the findings of the circuit court or its superior position to assess witnesses' credibility. *See Zimmerman*, 365 S.C. at 386, 618 S.E.2d at 900 ("A partition action is an equitable action and, as such, we may review the evidence to determine facts in accordance with our own view of the preponderance of the evidence."); *Laughon*, 360 S.C. at 524-25, 602 S.E.2d at 110 ("However, this broad scope of review does not require this court to disregard the findings at trial or ignore the fact that the trial judge was in a better position to assess the credibility of the witnesses.").

> The court of common pleas has jurisdiction in all cases of real and personal estates held in joint tenancy or in common to make partition in kind or by allotment to one or more of the parties upon their accounting to the other parties in interest for their respective shares or, in case partition in kind or by allotment cannot be fairly and impartially made and without injury to any of the parties in interest, by the sale of the property and the division of the proceeds according to the rights of the parties.

S.C. Code Ann. § 15-61-50 (2005). "The general rule is that a joint tenant who, at his own expense, places permanent improvements upon the common property, is entitled in a partition suit to compensation for the improvements whether the co-tenants assented thereto or not." *Shumaker*, 234 S.C. at 425-26, 108 S.E.2d at 685 (quoting *Dalgarno*, 30 S.E.2d 559)).

We find the master did not err in determining Swicegood was not entitled to any interest in the subject properties based upon her indirect contributions. Here, Thompson admitted Swicegood purchased some materials and contributed some labor to the improvement of the properties; however, Thompson also presented evidence she paid Swicegood several thousand dollars for this labor and material. Additionally, Thompson testified she paid $42,735.41 for construction and improvements to the Lake Hartwell home. Swicegood admitted Thompson paid her but denied she completely reimbursed her for her work. Swicegood did not

---

[5] We have combined Swicegood's third and fourth issues under this heading.

dispute Thompson paid all of the mortgage payments, utilities, insurance premiums, taxes and other dues on both properties. We find the evidence supports the master's findings that Thompson's contributions to both properties significantly outweighed Swicegood's. Although Swicegood performed some labor at both properties, we find the evidence shows Thompson reimbursed her for her contributions.

However, we find the master erred by concluding Swicegood was not entitled to a portion of the $45,000 remaining on the Lake Hartwell home. The master correctly concluded Thompson made the greater offer to purchase the properties and determined the remaining amounts to be divided between the parties was $6,000 in the Hilton Head condo and $45,000 in the Lake Hartwell home. The evidence shows Swicegood contributed nothing financially to the Hilton Head condo and therefore the master did not err by concluding Swicegood was not entitled to a portion of the $6,000 remaining therein. As to the Lake Hartwell home, the master concluded Thompson contributed $129,838.70, Swicegood contributed $22,000, and the equity in the home was $67,742.25. We acknowledge Thompson's contributions exceeded Swicegood's. Nevertheless, because Swicegood contributed $22,000 to the purchase of the home, we find the master erred in failing to apportion any of the $45,000 remaining in the Lake Hartwell home to Swicegood. Swicegood is entitled to a percentage of the $45,000 proportionate to her financial contribution of $22,000 to the purchase of the property and Thompson's contribution of $129,838.70. Swicegood's contribution of $22,000 was 14.49 percent[6] of the parties' total contributions of $151,838.70 toward the purchase price. Thus, we find she is entitled to 14.49 percent of the $45,000 remaining in the Lake Hartwell home for a total of $6,520.50.[7]

Accordingly, we affirm the master's finding Thompson was entitled to sole ownership, title, and interest in both properties and to the $6,000 remaining in the Hilton Head condo. We modify the master's order by awarding Swicegood a portion of the $45,000 remaining in the Lake Hartwell home. According to our calculations, Swicegood is entitled to $6,520.50, which is equal to 14.49 percent of $45,000.

---

[6] The actual figure was 14.489, which we rounded to two figures for simplicity.
[7] Thompson argues we should affirm the master's findings as to this issue because he found Swicegood committed ouster. However, the master denied Thompson's claim for ouster—a ruling Thompson did not appeal. Therefore, we decline to affirm the master's findings on this basis.

**CONCLUSION**

For the foregoing reasons, the master's order of partition is

**AFFIRMED AS MODIFIED**.

**HUFF and HILL, JJ., concur.**