(No. 16127.—Decree affirmed.)

EDWARDS WHITAKER *et al.* Appellants, *vs.* LEO J. SCHERRER *et al.* Appellees.

*Opinion filed October 28, 1924.*

1. PARTITION—*when parties to trust agreement are not entitled to partition.* Although the trust agreement among purchasers of land for investment contains no express covenant prohibiting partition, none of the parties may compel a partition of the trust property where the deed of trust recites that the respective interests of the purchasers shall consist only in certain certificates representing interests in the income from the property and requires the consent of the owners of a two-thirds interest in the proceeds of sale before the trustee can make a conveyance of any of the trust property.

2. SAME—*an agreement not to partition may be implied.* An agreement not to partition need not be expressed but it may be implied, as where the circumstances are such that partition would destroy the terms or plan of the agreement.

3. JUDICIAL SALES—*when levy and sale of interest in land is ineffectual.* Where the purchasers of land for investment accept, in lieu of an interest in the land, an interest, evidenced by a certificate, in the income and proceeds of the sale of the land, the legal title to which is conveyed to a trustee, a judgment creditor of a certificate holder may levy upon and sell the interest evidenced by the certificate, but an attempted levy upon and sale of an interest in the land itself is ineffectual.

APPEAL from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

D. E. KEEFE, and S. W. BAXTER, for appellants.

THOMAS L. FEKETE, JR., and CHARLES P. WILLIAMS, (BATES, WILLIAMS & BARON, of counsel,) for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Edwards Whitaker, the Illinois State Trust Company as trustee, and Edwards Whitaker, Mrs. H. B. Collins and the St. Louis Union Trust Company as trustees of the estate of H. B. Collins, deceased, F. J. Steger, E. J. Costigan and

Charles L. Kraft, filed their bill in the circuit court of St. Clair county against Leo J. Scherrer, P. J. Soucy and Charles P. Wise for the partition of certain land in that county and for incidental relief. The bill alleges that Edwards Whitaker, Horace J. Eggmann, F. J. Steger and Leo J. Scherrer purchased certain land adjacent to the city of East St. Louis in 1903 for approximately $217,000. The title to the property was taken in the name of Charles L. Kraft by deeds which were duly recorded. The purchase was made in the following proportions: Whitaker 35/55ths, Eggmann 5/55ths, Steger 5/55ths, and Scherrer 10/55ths. Fifty-five thousand dollars, part of the purchase price, was paid in cash, and the payment of the balance was secured by a mortgage, which has since been paid and discharged. Kraft, with the consent of the purchasers, by deed dated June 29, 1903, conveyed the land to the Illinois State Trust Company in trust. He also executed and delivered to the trustee at the same time a warranty deed to the property. The deed of trust recites, among other things:

"It is my object and intention that the title to the real estate above described is by deed and this agreement vested in the Illinois State Trust Company as trustee, in fee simple absolute, and that I, the said Charles L. Kraft, have no title in or to the said real estate or any interest in the same, but only in the rents derived from the same and in the proceeds which may be derived from the sale of any of the above described real estate; that this deed is intended as an active trust, vesting the title in the said real estate in said trust deed, and that I, the said Charles L. Kraft, shall not, under section 3 of the Conveyance act of the State of Illinois, have or derive any interest or title in or to said land. The proceeds of the sale of the real estate above described, and the rents that may accrue, shall be divided into fifty-five (55) equal parts, and said interests are represented by five (5) certificates of interest, as follows: [Nos. 1, 2, 3 and 4 for 5/55ths each and No. 5 for 35/55ths are here sched-

duled.] And said certificates of interest are hereby made personal property, the same as the proceeds of the sale would be, and my interests are fully and entirely represented by said certificates of interest, which are in words and figures as follows:" (Here form of certificate is inserted, which sets forth that .......... is entitled to ...... 55ths of the proceeds of the sale of the real estate held in trust; that upon the surrender of the certificate, properly assigned, a new certificate or certificates for the same interest will be issued in lieu thereof, and that the new certificate or certificates are subject to the terms and conditions of the trust agreement.)

The deed of trust provides that Kraft, as the owner of the certificates of interest, shall pay all taxes, interest on and principal of the incumbrance, keep all improvements insured in the name of the trustee and pay the premiums therefor, care for the property, make repairs and collect the rents; make a detailed report to the trustee on the first day of January, or at any other time if required by it, setting forth the moneys collected, the sums paid for taxes, insurance and repairs, and the balance on hand, which report shall be signed by the holders of certificates representing a two-thirds interest, and if objection be made thereto or to the management of the property, the trustee may refuse to accept the report and remove the certificate holders from such management, but until, in its discretion, it revokes such appointment, the trustee appoints Kraft, the holder of the original certificates, and his assigns, to care for the property. Additional provisions of the deed of trust are: The trustee is authorized, without the consent of the certificate holders, to take such action as it shall deem proper for the preservation of the property and to enable it more effectually to carry out the intentions of the instrument. In the event of the failure of any certificate holder to pay his share of taxes, insurance, interest or principal, then any other certificate holder, or the trustee, may pay

the same, and the sum paid, with interest at seven per cent, shall become a prior lien upon and be deducted from the share of the proceeds of any sale payable to the delinquent certificate holder. The trustee shall sell and convert the land into money whenever so authorized in writing by the owners of two-thirds interest in the proceeds of sale. The certificates of interest shall be transferable by assignment, upon which the trustee shall issue new certificates in lieu of those canceled. The trustee shall keep a record of all issues and transfers of certificates, which shall be open to the inspection of the holders, and it shall receive the proceeds of all sales and make distribution thereof, first, by retaining its fixed fees and compensation, and then, in the order named, by paying all taxes, insurance premiums, interest, principal and any sum due in caring for the property, and finally by making payment of the balance to the certificate holders in the proportions of their interests as evidenced by the certificates.

It is further alleged in the bill that: The trustee accepted the trust, and immediately after the issuance of the original certificates they were assigned by Kraft to Whitaker, Eggmann, Steger and Scherrer. Certain portions of the land have been sold and conveyed by the trustee. In the purchase of the property Scherrer concealed from Whitaker, Eggmann and Steger the fact that he acted as the agent for the original owner, William D. Orthwein, and that he was to receive from Orthwein a commission for making the sale. Instead of actually contributing $10,000 as his share of the cash payment on account of the purchase price, that sum was deducted from his commission. A bill for an accounting was afterwards filed by Whitaker, Steger and Eggmann against Scherrer and others, and in that suit a decree was entered which, among other things, found that Scherrer had acted as the agent of Orthwein in the sale of the property, and ordered him to pay to the three complainants 45/55ths of $10,000, or $8181.81, which he (Scherrer) had improp-

erly retained as commission.  The decree further found that
Scherrer had pledged his 10/55ths interest in the property
to Prosper J. Soucy, who was entitled to reimbursement of
the amount due him from the interest of Scherrer, and that
after Soucy's claims should be satisfied, Scherrer's interest
should be charged with said sum of $8181.81; that a part
of the purchase price remained due to Orthwein, and it was
ordered that when the last payment should be made on the
incumbrance, the balance still due Scherrer as commission
should be deducted from the residue of the purchase price
and paid to the trustee for the benefit of the three complain-
ants and Scherrer in the proportions of their respective in-
terests.  The bill further alleges that:  Charles P. Wise, one
of the defendants, on September 16, 1915, recovered a
judgment against Scherrer for $2760.07.  An execution was
issued and levied and the property held in trust was sold
by the sheriff.  No redemption was made from the sale,
and Wise obtained a sheriff's deed to the interest of Scher-
rer in the property.  By virtue of such conveyance Wise
claims to be the owner of Scherrer's interest in the land,
except such parts as have been sold.  Eggmann transferred
his certificate to different persons, and H. B. Collins, a cer-
tificate holder, died, and his estate is in charge of his widow,
Edwards Whitaker, and the St. Louis Union Trust Com-
pany as trustees.  The Illinois State Trust Company desires
to be relieved of its trust, and it has been mutually agreed
between the trustee and the owners of more than three-fifths
of the equitable interests in the property that a bill for
partition should be filed.

The answer of Charles P. Wise admits the recovery of
the judgment in his favor against Scherrer for $2760.07,
and the levy, sale and issuance of the sheriff's deed, as al-
leged in the bill, and claims that he (Wise) is the owner
of the 10/55ths interest which Scherrer had in the property,
except the parts conveyed since he obtained his deed.

The amended answer of Scherrer denies that he acted as agent for the original owner of the land or that he had any contract for commissions for making a sale of the property; avers that under the deed of trust his sole interest, and that of the complainants other than the trustee, is personal property and not land, and that partition will not lie and ought not to be granted because it would be contrary to the intention of the parties and in contravention of the deed of trust; denies that Wise claims to be the owner of the interest of Scherrer in the trust property; avers that his (Scherrer's) interest was always of so equitable and personal a character that it was incapable of being levied upon or seized by virtue of an execution issued upon a judgment at law; avers that pursuant to an agreement dated August 11, 1917, Scherrer assigned to Wise, as trustee, his 10/55ths interest in the proceeds of the sale of the trust property to insure the payment, first, to Wise of the money due him, with interest; second, to Wise of his expenses in the transaction; third, of a note held by Margaret McNulty; and fourth, of the residue to Scherrer, and that after payment of the amount due him Wise agreed to satisfy the judgment and to execute the deeds and assignments that might be necessary; denies that the trustee is desirous of being relieved of its trust and that the owners of three-fifths of the equitable interests in the proceeds of sale have any right to control the conduct of the trustee; and avers that the real purpose of the complainants, other than the trustee, is, by an early sale of the property to deprive him of any interest therein by causing its sale as an integer, which will require for its purchase so large a sum of money as to render him incapable of participating in the bidding at the sale in partition.

Prosper J. Soucy in his answer denies that the complainants have any interest in the trust property subject to partition, or that the sheriff made any levy upon any interest therein pursuant to the judgment in the case of Wise *vs.*

Scherrer, or that by virtue of any execution or levy any interest in the trust property was sold or conveyed to Wise.

The complainants filed exceptions to those portions of the answer of the defendant Scherrer which denied the right of partition. These exceptions were overruled by the court and the complainants elected to stand by their exceptions. The court thereupon dismissed the bill for want of equity. This appeal followed.

No replication was filed to any of the answers. Both parties to this suit agree that the only question at issue is whether the property involved is subject to partition.

The purchase of the property was a joint adventure undertaken by the parties for the profits which they expected to realize from the sale of the land in smaller parcels. To accomplish their purpose it was advantageous, if not necessary, to avoid questions which might grow out of a proper or equitable division of the land among the purchasers, as well as complications which might arise from litigation, or from death if the parties participating in the venture took and retained the title to the land in their own names. In addition to these considerations, the extent and nature of the property, the disproportionate contributions to the investment and the necessity of facility in making conveyances all contributed to the creation of the trust. By means of the trust the property was kept intact, any parcel sold was readily conveyed, and the interest of each beneficiary was represented by a certificate easily transferable. Kraft took title to the property at the request of the purchasers, and by their consent conveyed it to the Illinois State Trust Company in trust. He sets forth in the instrument creating the trust that it is his object and intention that the title to the property shall be vested in the trustee in fee simple, and that he has no title to or any interest in the property but only in the rents and the proceeds of sales. The rents to be derived from and the proceeds of sales of the property are divided into fifty-five equal parts, originally rep-

resented by five certificates of interest to evidence the respective contributions to the cash payment made on account of the purchase price of the property. These certificates were delivered to the purchasers, and the deed of trust expressly declares that they are made personal property and that the several interests are fully and entirely represented by the certificates. The form of the certificate is set forth in the deed of trust, and recites that the holder is entitled to his proportion of the proceeds of the sale of certain real estate and not of the real estate itself; that upon the surrender of a certificate, properly assigned, a new certificate or certificates for the same interest will be issued in lieu thereof, and that the certificates, whether issued originally or subsequently to take the place of canceled certificates, are subject to the terms and conditions of the deed of trust.

The trustee appointed Kraft as agent to care for the property, but it has, in its discretion, the power to remove him and to appoint another. It can, without the consent of the certificate holders, take such action as it may deem proper for the preservation of the property and to enable it more effectually to carry out the intent of the instrument creating the trust, and it is authorized, if any certificate holder fails to pay his share of the carrying charges, to advance the money necessary therefor, in which case the advancement, with interest, will become a prior lien upon the share of the defaulting certificate holder in the proceeds of any sale of trust property and not upon any part of the property itself. The trustee is required to make conveyances whenever thereunto directed by the owners of two-thirds of the interests in the proceeds of sale, and the form of such authorization recites that the holders "desiring to obtain our respective interests in the proceeds of the sale" of a certain parcel of land (describing it) request its sale and conveyance by the trustee. The certificates of interest are made transferable by assignment. In the event of any sale, the order of distribution of the proceeds by the trus-

tee is specified, and after provision is made for its compensation, the payment of taxes, liens, insurance premiums, interest on and principal of the original purchase money mortgage and expenditures for the management of the property, the balance is required to be distributed among the owners of the certificates of interest or their personal representatives, in the proportion of their respective interests as evidenced by their certificates.

While there is no express covenant in the deed of trust which prohibits partition at the instance of any interested party, yet the implication is clear that not only was partition of the property not contemplated by any of the purchasers, but to permit it would be contrary to their plan and understanding. Each purchaser accepted, in lieu of an interest in the land itself, an interest in the proceeds of sale, and this interest was evidenced by a certificate. Nothing in the plan adopted prevented the sale by any certificate holder of his interest in the proceeds of sale. In fact, the certificate is more readily transferable than an undivided interest in the land could be conveyed. The value of the interest represented by a certificate is as easily ascertainable as is the value of an undivided interest in the land. The parties agreed that it would require the owners of a two-thirds interest in the proceeds of sale to direct a conveyance by the trustee of any of the trust property. This provision was made for the protection of the parties interested. The plan could not be carried out if any beneficiary, however small his interest, could compel division or partition of the trust property.

An agreement not to partition need not be expressed but it may be implied. The circumstances may be such that partition would destroy the terms or plan of the agreement, and in that event partition will not be allowed. In *Arnold* v. *Arnold,* 308 Ill. 365, at page 367, we said: "It has been said in general terms that an adult tenant in com-

313—31

mon has an absolute right to partition, (*Hill* v. *Reno,* 112 Ill. 154; *Ames* v. *Ames,* 148 id. 321;) but it has been in cases where there was neither an equitable nor legal objection to the exercise of the right and partition was in accordance with the principles governing courts of equity. Wherever any interest inconsistent with partition has been involved, the general rule has always been qualified by the statement that equity will not award partition at the suit of one in violation of his own agreement or in violation of a condition or restriction imposed upon the estate by one from whom he claims, or where partition would be contrary to equitable principles. Partition will not be awarded in a court of equity where there has been an agreement either not to partition, or where the agreement is such that it is necessary to secure the fulfillment of the agreement that there should not be a partition. Such an agreement may be verbal if it has been acted upon, and it need not be expressed but will be readily implied and enforced if necessary to the protection of the parties.—*Martin* v. *Martin,* 170 Ill. 639; *Bissell* v. *Peirce,* 184 id. 60; *Ingraham* v. *Mariner,* 194 id. 269; *Seals* v. *Treatch,* 282 id. 167; *Hill* v. *Reno, supra.*"

We do not believe that the judgment recovered by Wise against Scherrer is material to this controversy. Under the contract between them, set up in Scherrer's answer, Wise accepted, as trustee, an assignment of Scherrer's certificate to secure the payment of the money due on the judgment and for other purposes. Upon the payment of the judgment Wise agreed to satisfy it of record, and also to make conveyance by quit-claim deeds, if necessary. By that agreement Scherrer continued to be the owner of the certificate and has a right to object to partition. The attempted levy, sheriff's sale and conveyance of Scherrer's interest in the real estate were ineffectual.

Nor did the decree against Scherrer for $8181.81, entered on January 24, 1905, dissolve the trust. It could do

no more than charge Scherrer's interest in the proceeds of the sale of land. In any event, there was no levy, pursuant to that decree, upon any of the trust property.

The right of partition was properly denied, and the decree of the circuit court will therefore be affirmed.

*Decree affirmed.*