JOSEPH BAFFONI *et al. vs.* PETER BAFFONI *et al.*

JULY 7, 1950.

PRESENT: Flynn, C.J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J.   This is a bill in equity for partition of real estate and also for an accounting.   The cause is here on respondents' appeal from the superior court's decree of partition by metes and bounds with owelty to the respondents.   They complain that it is against the law and the evidence and the weight thereof, and that it does not do equity between the parties.

Throughout this opinion we shall refer to Peter Baffoni and Joseph Baffoni as though they were the only parties to the cause.   Actually they are the sole owners of the real estate in question but the wife of each one was also made a party because of her inchoate right of dower in such real estate.

Respondents in their brief and oral argument have summarized their reasons of appeal under three specific points as follows:   "1. The Superior Court erred in the approval of the Master's report for partition by metes and bounds because there was no competent and legal testimony upon which said division by metes and bounds could be based.

2. The division by metes and bounds, as recommended by the Master and as approved by the Superior Court, is inequitable to the respondents. 3. The Master's statement of accounting, as approved by the Superior Court, is erroneous." We shall discuss those points in that order.

We find no merit in the first point. The complainants in their bill prayed for relief preferably by metes and bounds and in effect the respondents in their answer joined in that prayer. The trial justice was required to grant such relief unless it appeared to be impracticable in which event it lay in his discretion to order a sale of the property and a division of the proceeds. *Lannon* v. *Lannon*, 40 R. I. 60. The property in question here, due to its shape, topography and the state of its use by the parties, presented peculiar but apparently not insuperable obstacles to an equitable partition by metes and bounds. However, in view of the necessity for an accounting, which arose because of the way the parties had used the land and discharged its burdens, the trial justice referred the case to a master and deferred the entry of a decree of partition until his report was received.

Among other things, the master was commissioned to inquire into the value of the real estate and to recommend an equitable division thereof between the parties. Pursuant thereto he held a series of hearings at which an appraiser of real estate testified at considerable length as to the value of the real estate generally, the value of certain improvements thereon, the value of the land without such improvements, the comparative values of certain possible divisions of the real estate, and finally its probable value for future development as residential property. Based almost wholly on such testimony aided by a view of the *locus in quo* the master recommended the division which the court approved and to which respondents object.

The basis of their objection is that the appraiser was not qualified to testify as an expert on the value of rural real estate. After a preliminary examination of the witness

as to his training and experience in appraising real estate, the master, over respondents' objection, allowed him to testify. Their exception thereto was overruled by the trial justice. The qualification of expert witnesses rests in the discretion of the trial court. *Combination Fountain Co.* v. *Millard,* 50 R. I. 50; *Bond* v. *Berson,* 50 R. I. 192. Such discretion will not be disturbed by this court unless it is abused. The transcript discloses that while the witness did not have any prior experience in appraising rural real estate he was an experienced appraiser of urban real estate and was trained in the principles and practices of appraising real estate generally. In such circumstances we cannot say that the trial justice abused his discretion in sustaining the master's ruling that the witness was competent to testify as to the value of the real estate involved here.

Respondents, under their second point, question the merits of the division by metes and bounds based solely upon such evidence. They argue that the undisputed testimony of complainant Joseph Baffoni, hereinafter referred to as Joseph, and respondent Peter Baffoni, hereinafter called Peter, as to the manner in which they actually used the real estate itself shows that the division is inequitable and not according to law. We are of the opinion, after considering all the evidence, that such argument, at least in part, is sound. It appears to us that the respondents are justly entitled under the law and the evidence to a more substantial and useful portion of the land than has been allocated to them in the final decree subject, however, to a corresponding reasonable reduction in the award of owelty to them. We shall try to point out why such a readjustment should be made.

This real estate consists of certain improvements on an irregular tract of land somewhat in the form of a trapezium. It abuts on Greenville avenue in the town of Johnston for a distance of about 620 feet, extends back in a general westerly direction about 2300 feet, and contains about 20 acres more or less. A brook flows across the tract in a

general northerly direction. At the point where it enters the tract it is about 600 feet westerly from the southeast corner of the tract on Greenville avenue, but where it leaves it is about 330 feet westerly from the northeast corner of the tract on said avenue. The portion of the tract beyond the brook to the westerly boundary is mostly woodland and in part marshy. Practically all of the improvements are located generally east of the brook.

The improvements at the date of purchase on November 23, 1934 consisted of a two-story house, a four-car garage, a large barn and a small barn. In accordance with their intention in purchasing the property each party used one half of the land in value, if not in area, in his own business. Joseph was engaged in raising chickens and Peter was in the dairy business. Both occupied the house, Joseph taking the first floor and Peter the second floor.

The remainder of the estate was used and improved separately by each party in the following manner. The small barn and the land in the rear of it to the brook and also the garage were taken by Peter for his dairy business. He tore down the barn and erected on its site at his own expense a large dairy building. In the rear of the building he sank an artesian well and also constructed a pipe line to the brook to carry off waste water from the dairy. He also made additions to the garage so that it now accommodates six cars. Joseph occupied all the land generally from the northerly side of the garage to the northerly boundary of the tract which included the large barn. He also occupied some of the tract beyond the brook and built thereon a chicken house. In the course of time he built several more chicken coops, a turkey coop, a chicken shelter, fence, water supply system and a galvanized pipe line. This was all done at his own expense in the pursuit of his business of raising chickens.

It thus appears that, excepting only the house, generally speaking the portion of the tract east of the brook and abutting on Greenville avenue was divided by the actual

use which the parties individually made of it, Peter using the southerly half thereof and Joseph taking the northerly half. The decree of partition, however, does not correspond with such actual use. It takes from Peter the land in the rear of the dairy building, orders him to sever his drainage line to the brook, and awards him only that portion of the southerly half described as follows:

"That certain tract or parcel of land, with all the buildings and other improvements thereon, on the westerly side of Greenville Avenue, in the Town of Johnston, County of Providence, in the State of Rhode Island, laid out, bounded and described as follows:—

Starting at a stone bound located on the westerly side of Greenville Avenue (which stone bound is located at a point which is the junction of the northeast corner of land now or lately of J. S. Kelley and the southeast corner of the tract herein described, and thence proceeding in a northerly direction along said Greenville Avenue to a concrete bound a distance of two hundred sixty-five and 2/10 (265.2) feet; thence turning an interior angle of 107° 18' and proceeding westerly to a drill hole in curb, a distance of one hundred forty-five and 9/10 (145.9) feet; thence turning a right angle and proceeding northerly a distance of thirty-six and 1/10 (36.1) feet; thence turning a right angle and proceeding westerly to a concrete bound a distance of one hundred sixty-five (165) feet; thence turning a right angle to a stone wall and proceeding a distance of two hundred three (203) feet, more or less; thence turning and proceeding easterly along said stone wall (which stone wall is the dividing line between land now or lately of J. S. Kelley and the property herein described to the point and place of beginning a distance of four hundred seven (407) feet, more or less."

This division deprives Peter not only of the use of the land between the dairy and the brook and his drainage line thereto but also of the use of his artesian well. Moreover it allots to him but a small portion of the entire tract. And such portion is less valuable than the remainder which is awarded to Joseph. However, the decree seeks to adjust

such discrepancy in area and value of the two portions by awarding owelty of $6200 from Joseph to Peter. After carefully considering the evidence we are of the opinion that it was error not to award Peter at least that portion of the tract westerly of the dairy building, as appears from complainants' exhibit A, to the middle of the brook. He was already using such land in part and had expended thereon substantial sums of money in making improvements for his special use in the conduct of the dairy business. The law is clear that a part owner who makes valuable improvements on a portion of the common tract should have the portion set off to him in partition, if it is practicable to do so. *Moore* v. *Thorp,* 16 R. I. 655. 40 Am. Jur., Partition §46.

In the case at bar it is not impracticable to set off to Peter that portion of the tract east of the brook which he is now using and upon which he has made valuable improvements, namely, the artesian well and the drainage line. The reduction in value of the remaining portion which will be caused by so amending the decree will not be great and Joseph can be readily compensated therefor by a reduction in the amount of the owelty due from him to Peter. The evidence shows that without the improvements the entire tract was appraised at $10,800, and that the greater part of such value inhered in the portion of the tract east of the brook fronting on Greenville avenue. The area which we think should be added to the portion allotted to Peter under the decree is comparatively small, somewhat more than one-half acre. Being in the rear of an industrial development, namely, the dairy, and having no direct access to the highway it is of greatly diminished value compared with the portion fronting on Greenville avenue. Based on the appraiser's estimate of $1000 an acre for the land in the rear of that fronting on Greenville avenue we think that the strip of land in back of the dairy may be fairly considered on all the evidence as worth not more than $600 an acre.

In the circumstances we are, therefore, of the opinion that $350 will amply compensate Joseph for the reduction of his share by slightly more than a half acre which will be the result of our amendment of the description of Peter's share in the final decree of the superior court. Such description is ordered to be amended by continuing the running of the northerly line at the dairy building westerly to the middle of the brook, thence turning approximately at a right angle and following the thread of the brook to the southerly boundary of the tract and then turning easterly to the point or place of beginning. A more precise and accurate description which will give effect to the purpose of such amendment may be adopted in the decree which the parties are hereinafter directed to present for our approval. The owelty payment from Joseph to Peter is reduced from $6200 to $5850 to make due allowance for the above readjustment of the partition by metes and bounds.

We have carefully examined the evidence with reference to the master's accounting between the parties and we find no merit in the respondents' third point excepting only as to an item of $160 which Peter testified he personally paid for legal expenses incident to the purchase of the property. There was no counter testimony by Joseph that he personally contributed to the payment of those expenses nor is there any testimony disputing that such expenses were incurred. In the circumstances we think that they were incurred and that Peter paid them. We are of the opinion that the trial justice erred in not correcting the master's report in this respect. Peter is entitled to a credit of $80 for this item in the accounting.

The respondents' appeal is sustained, and the decree is reversed in part. The parties may present to this court a form of decree in accordance with this opinion to be entered in the superior court.

*Greenough, Lyman & Cross, Alfred B. Stapleton,* for complainants.

*Irving Brodsky,* for respondents.