## 18075

Caroline W. FEW, Appellant, v. M. L. FEW, Respondent

(131 S. E. (2d) 248)

434

*Messrs. Wright, Scott, Blackwell & Powers,* of Florence, *for Appellant,*

*Messrs. Connor & Connor,* of Kingstreet, *for Respondent,*

May 30, 1963.

BRAILSFORD, Justice.

In 1941 Ben F. Few, who is the husband of the plaintiff, Caroline W. Few, and a brother of the defendant, Marion L. Few, purchased a 773-acre farm, the subject of this action for partition, and a 1,000-acre tract of woods land in Williamsburg County. Ben Few lived in New York and his brother in Kingstree. This purchase was made after Marion Few had called Ben's attention to the opportunity to buy the land at about $10.00 per acre and after they had reached some agreement that the farm would be operated by Marion and, according to Marion's testimony, that he would be given one-half interest in the land after Ben Few had realized his investment. Marion Few took charge of the farm, receiving a salary of $100.00 per month, and Ben provided funds for its operation and improvement. Timber was sold for approximately the purchase price of the land and in 1944

Caroline W. Few, to whom her husband had conveyed the farm, conveyed a one-half, undivided interest therein to Marion Few and Ben conveyed to him a similar interest in the woods tract.

The farming operation was continued from 1944 through 1957, with rather consistent losses. Large sums were expended for improvements, including new buildings, ditching, fencing, re-establishing abandoned fields, soil improvement, etc. Ben Few furnished the money in accordance with their agreement, which was thus stated by Marion:

"Ben was to furnish the money to run and operate the farm, whether it was a building or a piece of equipment of whatever it was. He was to furnish the money and I was to operate the farm."

\*   \*   \*

"The agreement that we had was I would do the work and he would furnish the money to have the work done with, and that is what I did, win, lose, or draw."

The defendant does not challenge plaintiff's claim that from 1944 to the commencement of this action plaintiff advanced $131,135.58 for the operation and improvement of the farm, of which she received back $27,953.27, leaving plaintiff out of pocket $103,182.31. This figure does not include large sums expended prior to the execution of the deed to the defendant, nor does it include contributions toward the construction of the dwelling hereafter considered.

A disagreement arose between the brothers in 1957, and defendant has had exclusive possession of the farm since that year.

This action for partition was commenced by Caroline W. Few in 1959. The complaint alleged that the premises could not be divided in kind without injury to the parties and sought a sale thereof for division. An accounting for rent for the years 1958 and 1959 (later amended to include 1960) was demanded.

. The answer of the defendant alleged that he had, with the consent of plaintiff, constructed a $65,000.00 dwelling on the property with his own funds, except for "a small amount contributed by plaintiff and/or her husband, B. F. Few." As to the dwelling, the answer further alleged:

"* * * That it was the understanding and agreement at said time that said premises would be used as a lodge by the plaintiff and her husband and their guests at any time. That except for said understanding on the part of the plaintiff and defendant, that said defendant would have not built such type dwelling, and that because of their actions they are estopped now to claim any interest therein. That said dwelling house is now the home of the defendant and his wife, and they are entitled to have said home set off to them in the partition of said lands."

Plaintiff filed a reply to this answer by which she alleged that the dwelling had been constructed under an agreement between the parties that each should pay one-half of the cost; that large sums were turned over to defendant by plaintiff's husband to be used in such construction, for which he has never accounted and which she believes to have far exceeded one-half of the cost of the dwelling. The reply asks for an accounting for such funds and for judgment against the defendant for any sum in excess of plaintiff's share of the cost under the agreement.

The action was referred to a referee, before whom a voluminous record was compiled. The referee found that the cost of the dwelling was $65,000.00, which necessarily included an allowance for the services of the defendant in constructing the house without a general contractor, because an itemized list of materials and labor furnished by him shows expenditures of $57,196.86. The referee made no finding as to the amounts contributed by the respective parties. However, he found that the defendant had sold a "nice home" in Kingstree when he moved to the farm; that the dwelling had been occupied by him as a home since 1956; that it enhanced the value of the property by only $25,000.00; and that, quoting from the report:

"From all of the facts and circumstances as shown by the testimony it is my considered opinion that the equities of the case would dictate that the dwelling house and curtilage there around, with a way of ingress and egress from the public highway, should be set off to the defendant at a value of $25,000.00, that being the value as placed thereon by plaintiff's witnesses."

The referee further recommended that the balance of the property be sold for division and that "out of the half going to the defendant the value of the dwelling house as herein fixed be deducted."

This report was filed September 16, 1961. On the same day the referee filed a supplemental report in which he stated that he had not intended to recommend that the value of the dwelling be deducted from Marion's share of the proceeds of the land. Instead, he recommended "that this value should not be deducted from the defendant's one-half interest in the remaining lands, but that only one-half of the value of the land itself whereon the dwelling stands, and the land encompassed by the curtilage of the dwelling should be deducted from the one-half of the proceeds of sale going to the defendant."

In his original report, the referee stated that it was his "understanding that defendant and plaintiff have agreed upon a rental for the year 1961." (This is not supported by the record.) He recommended that the defendant be charged with rent for 1958, 1959 and 1960 at the same rate.

The plaintiff excepted to the recommendation that the dwelling be alloted to the defendant and the defendant excepted to the recommendation that the remainder of the property be sold for division. Both parties excepted to the recommendation with respect to rent.

The circuit decree, apparently disregarding the supplemental report, approved the referee's original recommendation that the dwelling be allotted to defendant at a valuation of $25,000.00, stating:

"* * * I agree with the Special Referee that this would be a most equitable disposition. This would give the plaintiff credit for $12,500.00 of the approximately $14,000.00 that she has in the place, *according to the testimony of the defendant*. The Special Referee should be affirmed in this respect." (Emphasis added.)

This conclusion was based upon the following considerations which are either summarized or quoted from the decree:

Actual disbursements for labor and material in the construction of the house amounted to $57,196.87, an amount substantially less than it would have cost except for the services of the defendant in buying materials, hiring labor, etc. "Of this amount the plaintiff * * *, *according to the testimony of the defendant,* contributed the sum of approximately $14,000.00." (Emphasis added.) The dwelling was built as a home for the defendant who had sold his home in Kingstree prior to moving on the farm at the request of plaintiff. "The defendant and his wife have no other home other than this particular dwelling, and I think that equity would demand that under the circumstances, that they be allowed to retain this home."

Although the replacement value of the house is approximately $65,000.00, "the undisputed testimony of the plaintiff and the defendant" establishes that it does not enhance the value of the property by more than $25,000.00.

"To sell this house worth $65,000.00 at a loss of $40,000.00 to the owners would be most inequitable, and certainly under the law of partition would be a manifest injury to M. L. Few."

The court sustained the defendant's exceptions to the recommendation of the referee that the remainder of the property be sold for division and ordered that it be divided in kind, the defendant to be accountable for one-half of the value placed on the dwelling allotted to him.

The court, finding no evidence of an agreement as to rent for 1961, sustained plaintiff's exceptions to this phase of the

report and referred the case back to the referee to determine what rent should be charged defendant for 1958 through 1960.

Plaintiff's exceptions to the decree raise three questions:

I. Did the Court err in alloting the dwelling to defendant at a valuation of $25,000.00?

II. Did the Court err in directing that the property be divided in kind?

III. Did the Court err in referring the question of rent back to the referee?

The first two questions are so related that they will be discussed together.

The dwelling was constructed under an agreement between the Few brothers that each would pay one-half of the cost. Ben testified that it was agreed that total cost should not exceed $30,000.00. Marion denied this but testified that he told Ben that he thought the dwelling could be built for $50,000.00 to $55,000.00. Ben testified that he paid $28,000.00 on construction cost and supported this in part by documentary evidence. Marion testified that Ben's contribution was only $14,000.00. Neither the referee nor the court resolved these conflicts in the testimony and, for reasons hereafter stated, we need not do so.

By his pleading, the defendant, alleging that he had constructed the dwelling with his own funds, except for a small amount contributed by plaintiff, claimed that he is entitled to have it alloted to him because plaintiff is estopped from claiming any interest therein. The court, finding no estoppel, awarded the dwelling to the defendant at an assessed valuation on the ground that equity demanded that this be done under the circumstances. This conclusion is tenable only if not to allot the dwelling to the defendant would result in inequity to him, and if the allowance of his claim results in no inequity to his cotenant. *Bank of Swansea v. Rucker,* 156 S. C. 29, 152 S. E. 712, from which the following passage was quoted in *Shumaker v. Shumaker,* 234 S. C. 421, 425, 108 S. E. (2d) 682, 685:

"The rule appears well settled in this state that the right of a cotenant in possession of the common property to be reimbursed for improvements made by him, or in the partition to have the portion of the land improved by him allotted to him, is exceptional, and to maintain it the improving tenant must establish: (1) That he was in possession under an honest belief of ownership; or (2) that to disallow his claim would be inequitable; and (3) that the allowance would result in no inequity to the interests of his cotenants."

■ Compensation in money or by allotment of the improved portion of the common property to the improving tenant "is allowed not as a matter of legal right but purely from the desire of a court of equity to do justice and to prevent one tenant from becoming enriched at the expense of another." *Shumaker v. Shumaker,* 234 S. C. 421, 426, 108 S. E. (2d) 682, 685.

■ The court made no findings of fact on which the principles of the *Shumaker* and *Rucker cases* could have been invoked. Contrary findings are implicit in the provision of the decree that the defendant be charged with one-half of the estimated enhancement in the value of the property attributable to the dwelling. The defendant did not except. Consequently, under the law of this case, the defendant is not in the position of an improving tenant entitled to reimbursement or allocation of the improved portion of the premises under equitable principles. Instead, the dwelling is part of the common property in which the parties possess equal rights. Therefore, it is unnecessary for us to resolve the conflicts in the evidence relating to the contributions of the parties toward the construction of the dwelling or to review that relating to the extensive improvements which were accomplished with funds provided by plaintiff's husband. However, we think it appropriate to state that the clear weight of the evidence establishes that plaintiff will not be unjustly enriched by treating the dwelling as a part of the common property and throwing the contributions of both parties to it into the common pot with all of the other improvements.

We recognize the broad authority conferred upon the court to partition in kind or by allotment. Title 10, Chapter 28, Code of Laws. But partition in kind or by allotment may be resorted to only when it can "be fairly and impartially made and without injury to any of the parties in interest * * *." (Sec. 10-2205.)

All of the witnesses were enthusiastic about the quality of the dwelling. None questioned that its replacement value was well above $50,000.00. On the other hand, there was great disparity in their estimates as to the amount by which the dwelling enhanced the value of the property. Two of plaintiff's witnesses, one a forester and one a land surveyor, expressed the opinion that the house increased the value of the property by about $25,000.00. Both thought that the property could be divided in kind, especially if the house were excluded. However, both recommended partition by sale because of the possibility that the house would bring more than their estimate. One of the defendant's witnesses, a farmer and bank official, valued the house at $25,000.00-$30,000.00 and testified that the property could be divided in kind.

On the other hand, three witnesses sworn by the plaintiff attributed much higher enhancement value to the dwelling. Two of these were unusually well qualified real estate experts with broad experience in handling property of this type. They valued the property as a whole at between $170,000.00 and $180,000.00. One included the dwelling at $40,000.00 and the other at $65,000.00. Both testified convincingly that the value of the property would be seriously impaired by its division. The third of these witnesses was a local banker. He estimated the value of the property as a whole at $161,000.00, of which he attributed $65,000.00 or $70,000.00 to the dwelling. He was also of the definite opinion that to divide this property in kind would impair the value of the whole.

It is, of course, quite possible that the parties have overbuilt on this property and that their investment in the dwell-

ing cannot be realized in the market. Assuming that this is so to the extent found by the lower court, we think that equality requires partition by sale, which will afford each party an opportunity to back his judgment of value by bidding for the interest of the other. When the disparate opinions as to the enhancement value of the dwelling are considered, we are convinced that partition by allotment of the dwelling to defendant at a valuation of $25,000.00 and division in kind of the remaining land would involve manifest injury to plaintiff.

The court held that to sell this house at a loss of $40,000.00 to the *owners* "would be most inequitable, and certainly under the law of partition would be a manifest injury to M. L. Few." Since the plan of partition adopted by the decree forces Caroline W. Few to surrender her equal interest in the dwelling at a valuation based upon the same testimony from which the court assumes that a sale will result in a loss to the *owners* of $40,000.00, with no opportunity to protect her interest at a public sale, we think that injury to her is far more manifest. Especially in the light of conflicting, at least evenly balanced, opinion testimony as to value, it would be inequitable to bestow this bargain upon one tenant at the expense of the other. This inequity can be avoided only by public sale, which may be in parcels and as a whole, as the court may direct.

We conclude that the court erred in allotting the dwelling to the defendant and in failing to order partition by sale of the property and division of the proceeds.

There was no error in referring the question of rent back to the referee, subject, however, to any binding stipulations made by counsel at the trial.

Reversed and remanded for further proceedings consistent herewith.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., *concur.*