430 P.2d 753

**Johnnie Lee PRUDE, Plaintiff-Appellant,**

**v.**

**Carl LEWIS, Anna Belle Lewis, and Donald B. Lewis, Defendants-Appellees.**

**No. 8205.**

Supreme Court of New Mexico.

July 24, 1967.

Bigbee & Byrd, Richard N. Carpenter, Santa Fe, for appellant.

Schauer & Stiff, Roswell, for appellees.

## OPINION

OMAN, Judge, Court of Appeals.

This suit was brought pursuant to the provisions of §§ 22–13–1 to 22–13–8, N.M. S.A.1953, whereby plaintiffs sought partition, or partition sale, of 198.21 acres of land, which he claimed was owned by him and the defendants as tenants in common.: He claimed an undivided one-half interest in these lands.

The defendants, a husband and wife and their son, admitted that the record title to the lands showed the parties to be tenants in common, and showed that the plaintiff owned an undivided one-half interest therein. However, they alleged and contended that these lands were the subject of an oral partition agreement, whereby defendants were to have the sole and exclusive use of the property for ranching operations, and that plaintiff and his father, whose interest the plaintiff subsequently acquired, were to hold the legal title to a one-half undivided interest therein solely for the purpose of meeting the requirements of the United States Forest Service in qualifying for a Preference Right Permit to graze livestock on Forest Service lands. They sought a. dismissal of the complaint, or, in the alternative and in the event ·the court found plaintiff to have an interest in the lands,· an equitable division thereof, with the improvements thereon being awarded to defendants. ·

Prior to October 16, 1946, these fee lands. of approximately 198 acres were owned by J. C. Prude, the defendants' predecessor in· title, and who owned a one-half undivided interest therein, and by L. L. Prude and his son, Johnnie Lee Prude, the plaintiff in this cause, who owned the other one-half undivided interest therein. ·J. C. Prude· and L. L. Prude were brothers, and the defendant, Anna Belle Lewis, is the daughter of J. C. Prude.

These fee lands served as what is referred, to by the United States Forest Service as "commensurate acreage" for Forest Service "Preference Right Permits." Under these permits, J. C. Prude was authorized to graze 381 head of cattle and L. L. Prude and his son were authorized to graze 381 head of cattle on Forest Service lands.· These fee lands and the Forest Service lands together were referred to as the· Prude Ranch and totaled 39,462 acres, or approximately 62 sections.

On October 16, 1946, the defendants acquired the entire interest of J. C. Prude in the Prude Ranch, including all his interest in the fee lands, the Forest Service permits, and all ranch improvements.

Immediately after defendants acquired the interest of J. C. Prude in the ranch, the parties orally agreed to a division of the ranch into a north portion and a south portion. The north portion consisted of approximately 17,475 acres, and included the 198.21 acres of fee lands on which there were a permanent watering and headquarter improvements, consisting of two houses, corrals, etc. The south portion consisted of 21,988 acres, on which were located the other permanent watering on the ranch and headquarter improvements, consisting of two houses, corrals, etc. The headquarters on the north portion had been occupied by J. C. Prude, and the headquarters on the south portion had been occupied by the plaintiff and his father. By their oral agreement the plaintiff and his father took the south portion and the defendants took the north portion. A division fence was erected between them. The Forest Service was fully advised of this division and issued a grazing permit to the plaintiff and his father and a grazing permit to the defendants.

The parties continued to occupy and use their respective portions of the Prude Ranch, so divided by the fence, for more than 19 years prior to the filing of this suit on March 20, 1965. Shortly before filing the suit, the plaintiff had acquired some other fee lands which he could now use as commensurate acreage to hold his Forest Service permit. The minimum commensurate acreage required to hold either permit is 80 acres. During the intervening years the defendants had improved both of the houses on their portion of the ranch by enlarging the same, had shared with the Forest Service in the cost of drilling a new water well, and had constructed some pens for use in sheep ranching. Mr. Lewis estimated the cost of these improvements at $9,000.

The trial court also found:

"23. Any partition of the lands involved in this action must be made in keeping with the rights of the parties so that the Defendants can be awarded all of the improvements and waterings at the ranch headquarters, and 80 acres of said lands. If the lands are of such character, disregarding the improvements and the waterings on said lands, so that they can be divided in kind, giving to the Defendants all of said ranch headquarters improvements and the waterings, it will be equitable for this to be accomplished.

"24. That a sale of the lands involved in this suit would deprive Defendants of benefits accruing to Defendants under the division agreement referred to hereinabove, and would further be contrary to the implied agreement of the parties not to do so."

The trial court concluded, among other things:

"2. That the Defendants should be decreed to be the owners of all physical improvements, permanent springs and waterings on the lands involved herein.

* * * * * *

"4. That the Plaintiff is estopped from bringing an action for partition in kind, unless a division of the lands involved herein can be made so that the land containing the improvements, springs and waterings should be set apart to the Defendants.

"5. That under the circumstances of this case, a Court of equity should not lend its aid to the Plaintiff in attempting to force a sale of the lands involved.

"6. A Judgment may be presented in accordance with this Decision and providing for the appointment of commissioners to ascertain and report whether a partition may be made of said lands in keeping with this Decision and in accordance with law."

These findings and conclusions are attacked and will hereinafter be discussed.

The judgment and decree adopted the court's findings of fact and conclusions of law, and made the same a part thereof; appointed commissioners to ascertain and report unto the court whether a partition of the premises may be made in keeping with the decision of the court, and in accordance with the law; provided that plaintiff should be considered by the commissioners as one party and the defendants, jointly, as one party; and ordered the commissioners to go upon the premises and make partition thereof, in accordance with the decree of the court, as to the rights and interests of the parties (including improvements and waterings), assigning to each party his share by metes and bounds, if the same can be done without manifest prejudice to the parties.

The plaintiff has appealed from the judgment and decree, and relies upon four points for reversal.

■■ The first claimed error is the refusal of the trial court to permit plaintiff to amend his pleadings to assert, as against the claimed oral partition, the defense of the statute of frauds. Plaintiff cites the rule applicable to the amendment of pleadings and many cases and other authorities construing the applicability of this rule. He contends, and correctly so, that leave to amend should be freely given when justice so requires. He concedes that the matter of permitting an amendment rests in the sound discretion of the trial court, but he insists the trial court abused this discretion in denying his proposed amendment.

The defendants counter by asserting the plaintiff should have pleaded the defense before proceeding to trial, and that, in any event, it was within the sound discretion of the trial court to grant or deny the request. They further contend that, in all events, the court, by invoking equitable estoppel, eliminated all defenses, including the protection afforded by the statute of frauds.

Both contentions overlook the fact that the court found against an oral partition of the only lands involved in this case. Had he found these lands had been partitioned,

the result would have been the dismissal of defendants' complaint. As above shown, the court found the fee lands here in question had not been partitioned pursuant to the oral agreement, although they were a part of the subject matter of the agreement, and he thereupon decreed that partition should be accomplished. He did make a determination of certain equities which he ruled should be considered in making the partition, and, as shown above, these related to the rights of defendants to the permanent watering and other improvements on the portion of the ranch they had received and occupied for more than 19 years. He also determined that a partition sale should not be made.

■■ A reversal of the court's refusal to allow the requested amendment, even if we were inclined to feel that the court erred in so doing, would accomplish nothing. An appellate court will not correct errors which have not affected the ultimate decision of the trial court. Tevis v. McCrary, 75 N.M. 165, 402 P.2d 150 (1965); Wieneke v. Chalmers, 73 N.M. 8, 385 P.2d 65 (1963); Wiggs v. City of Albuquerque, 57 N.M. 770, 263 P.2d 963 (1953). Furthermore, the only oral agreement here involved had been consummated, or, to state it otherwise, the accomplishment thereof had been entered upon, more than 19 years prior to the filing of the suit. The statute of frauds is no defense to an oral agreement which has been so consummated. Restatement, Contracts § 196 (1932); Ebert v. Wood, 1 Binn. (Pa.) 216, 218 (1807); Calhoun v. Hays, 8 Watts & S. (Pa.) 127, 132 (1844); Mellon v. Reed, 114 Pa. 647, 653, 8 A. 227, 229 (1887); see Hazen v. Barnett, 50 Mo. 506 (1872); Sutton v. Porter, 119 Mo. 100, 24 S.W. 760 (1893); Cave v. Wells, 319 Mo. 930, 5 S.W.2d 636 (1928); Le Bourgeoise v. Blank, 8 Mo.App. 434 (1880); see Childers v. Talbott, 4 N.M. (Gild.) 336, 16 P. 275, 277 (1888); see also 4 Thompson, Real Property § 1821 (Repl.1961).

Plaintiff's second point constitutes an attack on fifteen of the trial court's findings of fact, on the ground that they are un-

supported by substantial evidence, and claimed error on the part of the trial court in not making certain requested contrary findings.

The plaintiff's entire attack on the court's findings is directed at the language in these findings, which suggest and which plaintiff has interpreted as suggesting, that the parties in 1946, agreed to an oral partition of the entire ranch, including "* * * the fee lands as well as the Forest Service Allotment land, the fee lands going to Appellees [defendants]."

He also objects to the implication in the oral agreement that plaintiff would not seek a partition of the fee lands, leading to a possible sale thereof, and to the finding that the improvements, including the permanent waterings, were also divided by the oral agreement.

The matter of whether or not the trial court properly found an implied agreement not to partition the lands, leading to a possible sale thereof, and properly concluded that no such sale should be enforced so long as either party needs the same as commensurate acreage, will be hereinafter discussed.

▉ As to the matter of an oral agreement of partition, the trial court found no such agreement as to the fee lands and proceeded to appoint commissioners looking toward a partition thereof. If any finding, and the conclusion therefrom, can be interpreted as suggesting that the court intended that defendants were to get all the fee lands pursuant to the oral agreement, such must be disregarded, because this is contrary to the express judgment and decree of the court. Erroneous findings of fact, unnecessary to support the decision and judgment of the court, are not grounds for reversal. Alexander v. Cowart, 58 N.M. 395, 271 P. 2d 1005 (1954); Visic v. Paddock, 72 N.M. 207, 382 P.2d 694 (1963); Melfi v. Goodman, 73 N.M. 320, 388 P.2d 50 (1963); Board of County Comm'rs of Dona Ana County v. Little, 74 N.M. 605, 396 P.2d 591 (1964).

▉ The contention, that there is no support in the evidence for the court's finding and conclusion that defendants should be awarded and decreed to be the owners of the permanent watering and the improvements on the fee lands, must fail. In addition to the fact that plaintiff and his father received the improvements and watering on the south portion which they selected, the fact that defendants have maintained, enlarged and enhanced the value of the improvements here in question, and the fact that defendants have been in possession and have had the sole use of this watering and other improvements for over 19 years, the plaintiff himself testified as follows:

"Q. Now, my question again, you say that it was discussed, as I understand your deposition, specifically, that you and your father were to get all of the improvements south of that division fence, for yourselves, permanently, is that right?

"A. Well, I don't know whether we even went into that discussion or not. We presumed that is the way it would be, the division, that what is on the north side would be theirs, and that on the south side would be ours, except the deeded land."

The defendant, Carl Lewis, testified in regard to the improvements that "they [plaintiff and his father] got all the improvements on their side and I got all the improvements on my side."

▉ Many of our statutes were taken from Missouri, and, therefore, the decisions of that state are helpful. Montoya v. Unknown Heirs, 16 N.M. 349, 367, 120 P. 676, 682 (1911), aff'd 232 U.S. 375, 34 S.Ct. 413, 58 L.Ed. 645 (1914). The Missouri courts have consistently held that the trial court has great latitude in adjusting the equities between the parties to such a suit. Richardson v. Kuhlmyer, 250 S.W.2d 355, 360 (Mo.1952); Lester v. Tyler, 69 S.W. 2d 633 (Mo.1934); Byrne v. Byrne, 289 Mo. 109, 233 S.W. 461 (1921); Davidson

v. I. M. Davidson Real Estate & Inv. Co., 249 Mo. 474, 155 S.W. 1 (1913); DeVoto v. DeVoto, 39 S.W.2d 1083 (Mo.App.1931); see also Kayann Properties, Inc. v. Cox, 268 N.C. 14, 149 S.E.2d 553 (1966).

The evidence supports the decision of the trial court that in any equitable partition of the fee lands the defendants should be awarded the watering and other improvements thereon, and at least 80 acres of land to serve as commensurate acreage for the holding of their grazing permit. The trial court, in making any partition of lands, has the right to make a determination of the equities as between the parties. Easterling v. Simmons, 293 S.W. 690 (Tex.Civ. App.1927); Orsburn v. Orsburn, 196 Ky. 176, 244 S.W. 417 (1922); Jenkins v. Strickland, 214 N.C. 441, 199 S.E. 612 (1938); Dillard v. Alexander, 277 Ala. 202, 168 So.2d 233 (1964); Baffoni v. Baffoni, 77 R.I. 232, 74 A.2d 857 (1950); Few v. Few, 242 S.C. 433, 131 S.E.2d 248 (1963); Webb v. Mitchell, 371 S.W.2d 754 (Tex. Civ.App.1963); 4 Thompson, Real Property 324–25 (Repl.1961).

Section 22–13–5, N.M.S.A.1953, imposes the burden upon the trial court to ascertain and declare the rights, titles and interests of the parties. This section of our statute provides:

"Decree—Binding effect.—The court shall ascertain and declare the rights, titles and interests of all the parties to such proceedings and render such decree as may be required by the rights of the said parties, which said decree shall be binding upon all of the said parties, whether they be adults or not."

■ The judgment and decree of the court declaring the rights of the parties, ordering partition, and appointing commissioners is interlocutory. Montoya v. Unknown Heirs, supra; Torrez v. Brady, 35 N.M. 217, 292 P. 901 (1930). It constitutes a final declaration of the rights, titles and interests of the respective parties, but further judgment and decree to vest and divest title to the respective portions upon parti-

tion, or, in the event of a sale, to confirm the sale and distribute the proceeds is required.

Plaintiff's point three is an attack upon the court's finding, that a sale of the lands would deprive defendants of the benefits of the division or partition agreement and would be contrary to the implied agreement of the parties not to do so, and upon the court's conclusion that all the parties are estopped from bringing any action to enforce or attempt to enforce a sale so long as the lands are needed by the parties, or their successors, as commensurate lands for Forest Service permits.

His fourth point is that the court was without jurisdiction to make and enter the judgment and decree, declaring the rights, titles and interests of the parties, prior to the appointment of and report by the commissioners as provided in §§ 22–13–6 & 22–13–7, N.M.S.A.1953.

In support of his contention that the court lacked jurisdiction to enter a judgment and decree such as that entered, prior to the appointment and report of commissioners, he cites Marquez v. Marquez, 74 N.M. 795, 399 P.2d 282 (1965); Field v. Hudson, 25 N.M. 7, 176 P. 73 (1918); Field v. Hudson, 19 N.M. 89, 140 P. 1118 (1914).

In the first Field case the doctrine of owelty was held to be inapplicable, because there was no appreciable difference in the value of the two lots involved.

The second Field case, insofar as the necessity for the appointment of and report by commissioners is concerned, held that " * * * the court has no power to enter a judgment partitioning real estate without the intervention of commissioners, and the judgment of the court must be based upon the report of such commissioners."

■ In the Marquez case, as pointed out by plaintiff, this court held that the trial court lacks jurisdiction to decree a sale in partition, absent the commissioner's report. However, in the present case, no

partition sale has been decreed. Commissioners have been appointed, but they have not yet made their report in writing.

In none of these three cases was there involved the question of the trial court's jurisdiction in declaring the rights, titles and interests of the parties prior to the intervention of commissioners. It is only logical that the rights, titles and interests of the parties should first be determined and a decree entered accordingly so that the appraisers can then, as required by the provisions of § 22–13–6, N.M.S.A. 1953, fairly and impartially make a partition of the premises in accordance with the decree of the court as to the rights and interests of the parties, if such can be accomplished.

We have above stated that the court's determination, that defendants should get the improvements in question, is supported by the evidence and is properly an issue to be determined in a partition suit. An adjustment of the equities requires a determination as to who is to get the improvements in a case wherein one of the co-tenants is in possession and using the property. See Lester v. Tyler, supra; Waller v. George, 322 Mo. 573, 16 S.W.2d 65 (1929); Few v. Few, supra; 4 Thompson, Real Property 324–25 (Repl.1961).

As to the question of estoppel, in addition to the court's finding No. 24 above-quoted, the court found:

"18. That at the time said division was made, all parties understood, and it was deemed of the essence of their agreement, that the right of the respective parties to continue to hold their respective Forest Permits was dependent upon their continuing to hold title to said fee lands, to serve as base or commensurate lands under the regulations of the United States Forest Service.

"19. It was inherent in the understanding of the parties to the parol partition agreement of said ranch, that the fee lands in this suit would be used as 'base' or 'commensurate' lands for the purpose of holding the respective allotments or permits of the parties; and that neither party would seek to make a disposition of said lands which directly or indirectly would jeopardize the respective forest permits of the other party."

\* \* \* \* \* \*

The trial court's conclusions on the matter of estoppel appear as conclusions Nos. 4 and 5 which are above-quoted.

The court's findings of fact Nos. 18, 19 and 24 are three of the fifteen findings attacked under plaintiff's Point II. We are of the opinion that these findings are supported by the evidence. The sole question then remaining is whether or not the trial court could properly, as a part of the initial judgment and decree and as a part of the rights and interests to be thereby determined, declare that the one party was estopped from compelling a sale of the lands, so long as the lands were required by the other party as commensurate acreage to hold the Forest permit.

It may well be that the commissioners will find that the lands can be partitioned in accordance with the court's decree and without manifest prejudice to the parties, in which event the matter of estoppel will be of no further concern.

However, in the event a partition of the lands cannot be accomplished, a forced sale thereof for partition purposes would defeat the very reason for which the lands have been held in tenancy in common, and would enable one party, who has accepted all the benefits under the contract, to now terminate the rights of the other party to further enjoy the principal benefit of that contract. Without the Forest permit the ranching operations of the defendants would be destroyed.

Family settlements of estates are said to be favorites of the law, and, when fairly made, are to be given a liberal interpretation and should not be disturbed by those who enter into such settlements. Ortmann v. Kraemer, 190 Kan. 716, 378 P.2d 26 (1963). It is well settled that a co-tenant may waive his right to partition by

either an express or implied argeement. Ortmann v. Kraemer, supra; Kayann Properties, Inc. v. Cox, supra; Twin Lakes Reservoir & Canal Co. v. Bond, 401 P.2d 586 (Colo.1965), cert. denied, 382 U.S. 902, 86 S.Ct. 236, 15 L.Ed.2d 155 (1965); Schwartz v. Shapiro, 229 Cal.App.2d 238, 40 Cal.Rptr. 189 (1964); Nazzisi v. Nazzisi, 203 Cal.App.2d 121, 21 Cal.Rptr. 396 (1962); Sibley v. Hill, 331 S.W.2d 227 (Tex.Civ.App.1960); Whitaker v. Scherrer, 313 Ill. 473, 145 N.E. 177 (1924).

Equity will not award partition at the instance of one who seeks partition in violation of his own agreement. The objection or defense to a partition in such case is often stated to be in the nature of an estoppel. Ortmann v. Kraemer, supra; Kayann Properties, Inc. v. Cox, supra; Annot., 132 A.L.R. 666, 672 (1941).

The trial court has decreed a partition, if such can be accomplished without affecting the rights of the parties as declared by the court. Defendants made no objection to a partition consistent with the court's decree, and, thus, we need not concern ourselves with any suggested question of their rights to prevent a partition. Plaintiff has sought partition, so he is in no position to object thereto, if the partition ordered is consistent with the rights, titles and interests of the parties. The objection now being considered is the propriety of the court's ruling that a partition sale shall not be ordered, so long as the lands are needed by the parties as commensurate acreage to hold their respective Forest permits. It follows that if a co-tenant waives or contracts away his right to compel a partition, this includes his right to compel a sale for partition purposes. See Kayann Properties, Inc. v. Cox, supra.

Since the plaintiff contracted away his right to compel a partition, he cannot be heard to complain that the trial court has deprived him of the right to force a sale for partition purposes. We have not overlooked the fact that many cases hold that an agreement against partition, to be enforceable, must place a reasonable time limitation upon the period during which it can be enforced. See Annot., 132 A.L.R. 666, 671 (1941) and cases therein cited.

However, we must not lose sight of the following: (1) Plaintiff was a party to the agreement; (2) the parties understood and agreed that it was necessary that they should continue to hold title to the lands for use as commensurate acreage in order to hold their respective Forest permits under the regulations of the United States Forest Service; (3) the parties agreed that neither would seek a disposition of the lands which would directly or indirectly jeopardize the Forest permit of the other; (4) that at least 80 acres of commensurate lands are required under the Forest Service regulations in order for either party to hold his permit; (5) that the plaintiff has now acquired other commensurate lands, but the defendants have not; and (6) that a sale of the lands would require defendants to purchase the same, find other acceptable commensurate lands, or terminate their ranching operations.

In Coleman v. Coleman, 19 P.A. 100 (1852), the problem presented was somewhat comparable, in that there had been a partition of a larger estate, but certain mine-hills, which were a portion of the larger estate, continued to be held in common for the purpose of mining the ore therefrom so long as it was needed for the manufacture of iron in certain furnaces and forges. This agreement was made in 1787 and the partition suit was instituted in 1851. The Pennsylvania court denied partition of these hills, and in commenting on the agreement, which had been made a part of a partition decree in 1787, stated in part:

"* * * If the ore should fail (a contingency which at that day may have been deemed probable), or the manufacture of iron on the estate should cease, the agreement would have accomplished its mission, and the hills might then be parted. But until the happening of one or the other of these events, they were to remain appurtenant to the rest of the estate as before. * * *"

In answering the plaintiff's contention that, "* * * the partition of 1787 left the mine-hills a tenancy in common, and that partition is an inseparable incident of the estate of tenants in common, and therefore these plaintiffs should not be estopped," the court stated: "But it must be apparent that this action is nothing more than an attempt to have a second partition of that which has already been the subject of partition."

In our case the entire Prude Ranch had been divided more than 19 years prior to the filing of this suit, and as a part of that division agreement the fee lands, which are the lands here in question, were retained by both parties for the purposes hereinabove stated and explained. Until the time when neither of the parties to this partition agreement needs these lands as commensurate property with which to hold his Forest permit, because both have acquired other commensurate lands, have terminated their ranching operations, or because of the non-availability for some reason of the Forest Service lands, the agreement should be enforced, and equity certainly should not enforce a further partition inconsistent with the division agreed to and acquiesced in for more than 19 years.

We are also of the opinion that equity should deny a forced sale for partition purposes for still further reasons. The agreement here was not to waive or postpone partition forever, but only so long as the lands were needed as commensurate acreage to hold the respective Forest Service permits of the parties. Although the factual situations are different, we believe the language of the Alabama court in this regard in Smith v. Brasseale, 213 Ala. 387, 105 So. 199 (1925) is here applicable:

"* * * What would be a reasonable time in the present case, in the absence of a stipulation for perpetual forbearance, or for some definite time, would depend upon consideration of the lawful purposes for which the promise was made and the time to be consumed in its performance. * * * We are unable to say that the agreement against division was void on its face."

The rule concerning the right to partition was stated by the Illinois court in Arnold v. Arnold, 308 Ill. 365, 139 N.E. 592 (1923) in the following language:

"* * * It has been said in general terms that an adult tenant in common has an absolute right to partition. * * but it has been in cases where there was neither an equitable nor legal objection to the exercise of the right, and partition was in accordance with the principles governing courts of equity. Wherever any interest inconsistent with partition has been involved, the general rule has always been qualified by the statement that equity will not award partition at the suit of one in violation of his own agreement, * * * or where partition would be contrary to equitable principles. Partition will not be awarded in a court of equity, where there has been an agreement either not to partition, or where the agreement is such that it is necessary to secure the fulfillment of the agreement that there should not be a partition. Such an agreement may be verbal, if it has been acted upon, and it need not be expressed, but will be readily implied, and enforced, if necessary to the protection of the parties. * * *"

Here the plaintiff was a party to the agreement not to sell the lands in question so long as either party should need the same to hold his Forest permit, and it is still necessary that the lands not be sold to secure fulfillment of this agreement. See also Vierieg v. Krehmke, 293 Ill. 265, 127 N.E. 735 (1920); Schmidt v. Schmidt, 311 Ill. 458, 143 N.E. 75 (1924).

The other matters and arguments urged upon us by plaintiff have been considered, and we find them to be without merit.

It follows that the Judgment should be affirmed.

It is so ordered.

CHAVEZ, C. J., and CARMODY, J., concur.